## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

RACHELLE JACKSON,            )

      Plaintiff,          )

                       )

      v.                  )    No.

                       )

CITY OF CHICAGO, and CHICAGO  )

POLICE OFFICERS PATRICK J. McCORMACK, )

STAR 60045, MICHAEL O'DONNELL,  )    JURY DEMANDED

STAR 60029, R. VAHL, STAR 7350, and  )

S. BARSCH, STAR 18287,      )

                       )

      Defendants.        )

**03C 8289**

DOCKETED

NOV 20 2003

### COMPLAINT

NOW COMES the plaintiff, RACHELLE JACKSON, by her attorneys, DANIEL S. ALEXANDER, CHRISTOPHER R. SMITH, and PHILLIP L. COFFEY, and complaining of the defendants, CITY OF CHICAGO, and CHICAGO POLICE OFFICERS PATRICK J. McCORMACK, STAR 60045, MICHAEL O'DONNELL, STAR 60029, R. VAHL, STAR 7350, and S. BARSCH, STAR 18287, states as follows:

**INTRODUCTION**

1. This is a civil action seeking damages for depriving plaintiff, while acting under color of law as Chicago Police Officers, of rights secured by the Constitution and laws of the United States, including the rights secured by the 4th and 14th Amendments to the Constitution, and for the City of Chicago's failure to properly instruct, supervise, control and discipline the defendant officers, and for related State-law violations, including False Arrest, Malicious Prosecution, and Intentional Infliction of Emotional Distress.

**JURISDICTION**

2. This action is brought pursuant to 42 U.S.C. sec. 1983, 1985, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. Sections 1331 and 1341(3) and (4) and 1343, and the aforementioned constitutional and statutory provisions. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to Section 1367 to hear and decide claims arising out of state law.

**PARTIES**

3. Plaintiff is a 42-year old African-American citizen of the United States, who currently resides in Chicago, Illinois. She had no criminal background prior to this incident. She is a certified medical assistant and trained and certified in CPR.

4. Defendant police officers McCormack, O'Donnell, Vahl, and Barsch (the "individual defendants") are employed by the City of Chicago, Illinois. All the defendant officers are being sued individually.

5. Defendant City of Chicago (hereinafter "CITY"), at all times material to this complaint, was a municipality duly incorporated under the laws of the State of Illinois, and is and was the employer of the police personnel named herein as agents of the CITY. It is sued directly under the Monell Claim, and pursuant to the doctrine of respondent superior in the related State law claims.

6. At all times relevant hereto, defendant officers were acting under color of the statutes, ordinances, regulations, customs and usages of the State of Illinois, the City of Chicago, and the Chicago Police Department ("CPD."), and within the scope of their employment with defendant CITY.

2

**FACTS**

7.     On November 19, 2002, at or about 9:30 p.m., plaintiff Rachelle Jackson ("Rachelle") was walking to a neighborhood pub on her night off. She then heard a loud car collision in the area of 4300 S. Princeton, Chicago, Illinois.

8.     She turned and saw that a Chicago Police Department squad car had collided head on with a civilian Buick auto. Because she was trained in nursing and CPR, and because she was very near the scene of the accident, she ran to the crash site.

9.     As she approached the accident site, the squad car exploded into flames. She could see that the officer driving the squad car was injured and unconscious. She could also see that the passenger officer was dazed and unresponsive. Because she feared the car would explode or burn up, she decided the officers must be moved. She was closest to the passenger side officer, now known as Officer Brogan, so she decided to remove her first.

10.     Ignoring the great personal risk, she opened the passenger door of the burning squad car and carefully freed the dazed officer, then slowly dragged her out of the burning car by reaching under the officer's arms and pulling her out by her shoulders. As she pulled Officer Brogan out of the car, Rachelle held her up by keeping her arms under the Officer's arms, thus preventing the Officer from falling or further injuring herself.

11.     As Rachelle was pulling the hurt officer out of the squad car, numerous bystanders had approached the crash site. Unbeknownst to Rachelle, a bystander had apparently removed the service weapon of the officer driving the squad car.

12.     As Rachelle was holding Officer Brogan up, numerous ambulance and police personnel arrived at the scene. The EMS personnel took over the first aid to Officer Brogan.

3

13.     Rachelle was then approached by police officers on the scene, who told her that the driver's weapon was stolen. They asked her what happened and she told them what she witnessed and what she did to try to help Officer Brogan. She explained that she was busy helping Officer Brogan and did not see anyone take the driver's weapon.

14.     Rachelle was asked by the officers to come to the police station and make a statement. She was taken in a squad car to Area 1 headquarters at 1819 West 39th Street.

15.     Upon arrival at Area 1, Rachelle was taken to a conference room, and her purse was taken from her. After about fifteen minutes, Rachelle was brought to a small interrogation room with one metal bench, her coat and shoes were taken from her, and the door was closed and locked. She would be detained in this room from the evening of November 19th until November 22, 2002 at approximately 12:45 a.m.

16.     After being locked in the interrogation room for about fifteen minutes, three male white officers entered the room, defendants McCormack and O'Donnell, and another officer who left after about ten minutes.

17.     Defendants McCormack and O'Donnell began the interrogation by screaming at Rachelle: "you black bitch, you tried to steal her gun. She's hurt really bad and if she dies you're going to be charged with murder." Rachelle tried to explain that she was only trying to help the officer, but the defendant officers continued screaming, insulting, and questioning Rachelle. After this initial session, the officers left the room.

18.     About an hour later, McCormack and O'Donnell returned. They continued to scream at and intimidate Rachelle, using racially derogatory language and telling her that they had found out she was a prostitute and a drug dealer and a check forger (in reality Rachelle had

4

no criminal background or record), and that if she didn't come clean she was going down for murder.

19.     Rachelle made repeated requests to use the phone, to use the bathroom, and to be allowed to speak to a lawyer. She requested food and water. She also told the officers that her asthma was acting up and she needed medication. All of her requests were denied, except that in the first few hours of her multi-day detention, she was allowed two bathroom trips, she was given a small fast food meal, and a little water. After that, all of her requests were denied for the balance of her 2 ½ night detention. She received no food, no water, her bathroom requests were denied and she was forced to repeatedly urinate on herself.

20.     Throughout the two and ½ nights of detention, McCormack and O'Donnell would re-enter the room to interrogate, harass, and intimidate Rachelle, and to prevent her from sleeping. They repeatedly used racially derogatory language. They repeatedly called her a prostitute, stating that "we heard you have nice gams but a lousy pussy." As her urine-stained clothing began to smell in the multi-day ordeal, they would deride her for having a "stinky black pussy."

21.     Throughout the two and ½ nights of detention, McCormack and O'Donnell would repeatedly threaten Rachelle with murder charges and with physical violence. The officers told Rachelle that if she continued to deny involvement, they would "beat [her] ass and nobody would know it or do anything about it." The officers told Rachelle that she was going down for murder and she would never get out of jail, unless she signed a statement.

22.     After two days and two and ½ nights of interrogation abuse, torture, sleep deprivation, food and water deprivation, and threats of violence, Rachelle began to crack. She

5

was starting to have hallucinations. She was extremely thirsty and hungry. She was having difficulty breathing from her asthma. She stunk of stale urine. She began to believe that she would die in that room unless she signed the statement that had been prepared for her. She told the officers she would sign the statement, at which time the officers went over and over the details that they wanted Rachelle to confess to.

23.     Rachelle signed the statement, and she was charged with aggravated battery to a peace officer, robbery, and disarming a peace officer. She was then transported to Cook County Jail, where she remained for almost eleven months until her trial concluded on October 2, 2003.

24.     At her jury trial, several bystander witnesses, including a City of Chicago EMS worker, testified that it appeared that Rachelle was trying to help Officer Brogan. Some witnesses talked of pressure by the police to say that Rachelle was restraining Officer Brogan while her accomplice stole the driver's weapon. Following the close of the State's case, trial judge Shultz entered a directed verdict of not guilty to all charges, indicative of the innocence of Rachelle.

25.     Defendant officers McCormack, O'Donnell, Vahl, and Barsch conspired and agreed among themselves to (1) falsely arrest and detain Rachelle; (2) coerce and torture Rachelle into signing a confession they knew was false; (3) falsify police reports with inaccurate, false, and deceitful accounts of witness statements; (4) withhold material exculpatory evidence and information from the court, the prosecutors, and defense attorneys; (5) pressure witnesses to make false statements; (6) commit perjury and obstruction of justice; and (7) deprive Rachelle of her civil rights.

26.     In furtherance of this conspiracy, defendants McCormack and O'Donnell

6

committed the overt acts detailed above.

27.     In furtherance of this conspiracy, defendants Vahl and Barsch committed overt

acts including but not limited to knowingly writing false police reports, giving false testimony,

making false reports of witness statements, and withholding material exculpatory evidence from

the court, prosecutors, and defense counsel.

## Count 1

### Section 1983 and Fourth Amendment Violations

1-27.     Paragraphs 1-27 above are realleged here as if fully set forth.

28.     The arrest, detention, search and seizure of plaintiff's person and property

described above was in violation of 42 U.S.C. 1983 et seq. and plaintiff's right to be free of

unreasonable searches, seizures, and deprivations of liberty under the Fourth Amendment to the

Constitution of the United States, in that there was no probable cause or lawful justification for

the searches, seizures, detentions, and deprivation of liberty of the plaintiff.

29.     As a proximate result of the foregoing, plaintiff was deprived of her freedom and

dignity, and was greatly injured in her reputation and occupation and was exposed to public

scandal, disgrace, and humiliation, suffered great mental anguish, and was deprived of her

constitutional rights as described above, all to her damage.

WHEREFORE, plaintiff Rachelle Jackson demands judgment against the individual

officers, jointly and severally, for compensatory damages in an amount in excess of THREE

MILLION DOLLARS ($3,000,000) and further demands judgment against the individual

officers, jointly and severally, for punitive damages in an amount in excess of THREE

MILLION DOLLARS ($3,000,000), plus attorney's fees pursuant to statute and the costs of this

7

action and such other and further relief as this Court deems just, proper, and equitable.

## Count II

### Section 1983 and Fourteenth Amendment Due Process Claim

1-27.  Paragraphs 1 through 27 above are realleged here as if fully set forth herein.

28.  By participating in the conspiracy and acting as described above, the individual

officers withheld material exculpatory information and evidence from prosecutors and the court,

thus prolonging the criminal prosecution of Rachelle, prolonging her detention, and forcing her

to face trial without the benefit of material exculpatory evidence, thus violating her right to due

process under the Fourteenth Amendment to the Constitution.

29.  As a proximate result of this violation of due process, Rachelle was damaged,

including the deprivation of her liberty, pain and suffering, mental and emotional anguish and

humiliation, and damage to her reputation and occupation.

WHEREFORE, plaintiff Rachelle Jackson demands judgment against the individual

officers, jointly and severally, for compensatory damages in an amount in excess of THREE

MILLION DOLLARS ($3,000,000) and further demands judgment against the individual

officers, jointly and severally, for punitive damages in an amount in excess of THREE

MILLION DOLLARS ($3,000,000), plus attorney's fees pursuant to statute and the costs of this

action and such other and further relief as this Court deems just, proper, and equitable.

## Count III

### Section 1985 — Conspiracy to Deny Equal Protection and to Obstruct Justice

1-27.  Paragraphs 1 through 27 above are realleged here as if fully set forth herein.

28.  As detailed above, the individual officers conspired and agreed among themselves

to deprive Rachelle of equal protection of the laws, as guaranteed by the Constitution of the United States, and to obstruct justice.

29. In so doing, the officers were motivated by discriminatory-based racial animus.

30. As detailed above, the officers committed overt acts in furtherance of the conspiracy.

31. As a proximate result thereof, plaintiff was damaged, including the deprivation of her liberty, pain and suffering, mental and emotional anguish and humiliation, and damage to her reputation and occupation.

WHEREFORE, plaintiff Rachelle Jackson demands judgment against the individual officers, jointly and severally, for compensatory damages in an amount in excess of THREE MILLION DOLLARS ($3,000,000) and further demands judgment against the individual officers, jointly and severally, for punitive damages in an amount in excess of THREE MILLION DOLLARS ($3,000,000), plus attorney's fees pursuant to statute and the costs of this action and such other and further relief as this Court deems just, proper, and equitable.

## <u>Count IV</u>

### 1983 Action Against City for Failure to Properly Instruct, Supervise, Control & Discipline

1-27. Paragraphs 1-27 above are realleged here as if fully set forth herein.

28. The Constitutional violations detailed above, and in Counts I through III, were only possible for the defendant officers to perpetrate because of the customs, policies, and practices of CPD, whereby the CITY failed utterly to instruct, supervise, control and discipline the defendant officers.

29. These failures include (1) failure to take any steps to control, instruct, or discipline the

9

defendant officers even where some defendant officers had engaged in similar abuses in the past, thus maintaining an atmosphere and climate where Constitutional violations are not prosecuted or punished, encouraging officers to violate rather than respect the Constitutional rights of citizens; (2) failure to track, notice, act upon, or correct patterns of abuse by officers with multiple complaint files, thus encouraging a climate of Constitutional abuses; and (3) failure to instruct or train officers in what constitutes witness intimidation, proper interrogation, proper detention of suspects, proper treatment of suspects, and what constitutes improper use of coercion and torture.

WHEREFORE, plaintiff Rachelle Jackson demands judgment against the City of Chicago for compensatory damages in an amount in excess of THREE MILLION DOLLARS ($3,000,000), plus attorney's fees pursuant to statute and the costs of this action and such other and further relief as this Court deems just, proper, and equitable.

### Count V

### False Arrest — State Claim Against City and Officers

1-27. Paragraphs 1 through 27 above are realleged here as if fully set forth herein.

28. By participating in the above-described conspiracy, the individual officers knowingly sought to and did in fact falsely arrest plaintiff, knowing that there was no probable cause to arrest her.

29. The CITY is sued in this count pursuant to the doctrine of respondeat superior, in that defendant officers performed the actions complained of while on duty and in the employ of defendant CITY, and while acting within the scope of this employment.

30. As a direct and proximate result of the false arrest, plaintiff was damaged,

10

including the value of her liberty, exposure to public scandal and disgrace, damage to her reputation and career, mental and emotional suffering, humiliation and anguish.

WHEREFORE, plaintiff Rachelle Jackson demands judgment against the City of Chicago and the individual officers, jointly and severally, for compensatory damages in amount in excess of THREE MILLION DOLLARS ($3,000,000), and further demands judgment against the individual officers, jointly and severally, for punitive damages in an amount in excess of THREE MILLION DOLLARS ($3,000,000), and further demands attorney fees and the costs of this action, and for such other relief as this Court deems just, proper, and equitable.

### Count VI

### Malicious Prosecution — State Claim Against City and Officers

1-27.  Paragraphs 1 through 27 above are realleged here as if fully set forth herein.

28.  By participating in the above-described conspiracy, the individual officers knowingly sought to and did in fact maliciously prosecute Deputy Gaines on false charges for which they knew there was no probable cause.

29.  The CITY is sued in this count pursuant to the doctrine of respondeat superior, in that defendant officers performed the actions complained of while on duty and in the employ of defendant CITY, and while acting within the scope of this employment.

30.  As a direct and proximate result of the malicious prosecution, plaintiff was damaged, including the value of her liberty, exposure to public scandal and disgrace, damage to her reputation and career, mental and emotional suffering, humiliation and anguish.

WHEREFORE, plaintiff Rachelle Jackson demands judgment against the City of Chicago and the individual officers, jointly and severally, for compensatory damages in amount

11

in excess of THREE MILLION DOLLARS ($3,000,000), and further demands judgment against

the individual officers, jointly and severally, for punitive damages in an amount in excess of

THREE MILLION DOLLARS ($3,000,000), and further demands attorney fees and the costs of

this action, and for such other relief as this Court deems just, proper, and equitable.

<u>**Count VII**</u>

**Intentional Infliction of Emotional Distress Against CITY and Officers**

1-27.    Paragraphs 1 through 27 are realleged here as if fully set forth herein.

28.    The above-detailed conduct by the defendants was extreme and outrageous,

exceeding all bounds of human decency.

29.    Defendants performed the acts detailed above with the intent of inflicting severe

emotional distress or with knowledge of the high probability that the conduct would cause such

distress.

30.    As a direct and proximate result of this conduct, plaintiff did in fact suffer severe

emotional distress, resulting in injury to her mind, body, and nervous system, including loss of

sleep, mental anguish, nightmares, anxiety attacks, and flashbacks.

31.    The CITY is sued in this count pursuant to the doctrine of respondeat superior, in

that defendant officers performed the actions complained of while on duty and in the employ of

defendant CITY, and while acting within the scope of this employment.

WHEREFORE, plaintiff Rachelle Jackson demands judgment against the City of

Chicago and the individual officers, jointly and severally, for compensatory damages in amount

in excess of THREE MILLION DOLLARS ($3,000,000), and further demands judgment against

the individual officers, jointly and severally, for punitive damages in an amount in excess of

12

THREE MILLION DOLLARS ($3,000,000), and further demands attorney fees and the costs of

this action, and for such other relief as this Court deems just, proper, and equitable.

Respectfully submitted,

RACHELLE JACKSON

By: _____

One of her attorneys

Daniel S. Alexander
DANIEL ALEXANDER & ASSOCIATES, LTD.
33 North LaSalle
Suite 3300
Chicago, Illinois 60602
312-263-8005


Phillip L. Coffey
Christopher R. Smith
LAW OFFICES OF SMITH AND COFFEY
119 North Peoria Street, Suite 3A
Chicago, Illinois 60607
312-850-2600

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

JUDGE SHADUR

MAGISTRATE JUDGE
GERALDINE SOAT BROWN

In the Matter of

RACHELLE JACKSON

v.

CITY OF CHICAGO, et al

Case Number **03C 8289**

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

RACHELLE JACKSON

FILED
03 NOV 9 PH 1:33
CLERK
US DISTRICT COURT

DOCKETED
NOV 20 2003

| (A) | (B) |
|---|---|
| **SIGNATURE** | **SIGNATURE** (DSA) |
| **NAME** DANIEL S. ALEXANDER | **NAME** PHILIP L. COFFEY |
| **FIRM** DANIEL ALEXANDER & ASSOC., LTD. | **FIRM** LAW OFFICES OF SMITH AND COFFEY |
| **STREET ADDRESS** 33 N. LaSalle, Suite 3300 | **STREET ADDRESS** 119 Peoria Street, Suite 3A |
| **CITY/STATE/ZIP** Chicago, IL 60602 | **CITY/STATE/ZIP** Chicago, IL 60607 |
| **TELEPHONE NUMBER** 312-263-8005 | **TELEPHONE NUMBER** 312-850-2600 |
| **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** 6202318 | **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** 6211340 |
| **MEMBER OF TRIAL BAR?** YES ☒ NO ☐ | **MEMBER OF TRIAL BAR?** YES ☒ NO ☐ |
| **TRIAL ATTORNEY?** YES ☒ NO ☐ | **TRIAL ATTORNEY?** YES ☒ NO ☐ |
| | **DESIGNATED AS LOCAL COUNSEL?** YES ☐ NO ☒ |

| (C) | (D) |
|---|---|
| **SIGNATURE** (DSA) | **SIGNATURE** |
| **NAME** CHRISTOPHER R. SMITH | **NAME** |
| **FIRM** LAW OFFICES SMITH AND COFFEY | **FIRM** |
| **STREET ADDRESS** SAME AS "B" ABOVE | **STREET ADDRESS** |
| **CITY/STATE/ZIP** | **CITY/STATE/ZIP** |
| **TELEPHONE NUMBER** | **TELEPHONE NUMBER** |
| **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** 6201953 | **IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)** |
| **MEMBER OF TRIAL BAR?** YES ☒ NO ☐ | **MEMBER OF TRIAL BAR?** YES ☐ NO ☐ |
| **TRIAL ATTORNEY?** YES ☒ NO ☐ | **TRIAL ATTORNEY?** YES ☐ NO ☐ |
| **DESIGNATED AS LOCAL COUNSEL?** YES ☐ NO ☒ | **DESIGNATED AS LOCAL COUNSEL?** YES ☐ NO ☐ |

**PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.**

**JS 44** (Rev. 3/99)   **CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**(a) PLAINTIFFS**

RACHELLE JACKSON

**03C 8289**

**DEFENDANTS**

CITY OF CHICAGO AND CPD OFFICERS
MCCORMACK, O'DONNELL, AND VAHL, AND
BARSCH.

**DOCKETED**

**(b)** County of Residence of First Listed Plaintiff    COOK
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)    NOV 20 2003

**JUDGE SHADUR**

**MAGISTRATE JUDGE
GERALDINE SOAT BROWN**

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Daniel S. Alexander
DANIEL ALEXANDER & ASSOC., LTD., 33 N. LaSalle, Ste. 3300, Chicago, 60602
312-263-8005

Attorneys (If Known)

**II. BASIS OF JURISDICTION**    (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT**    (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Inj.

PERSONAL INJURY
- ☐ 362 Personal Injury— Med. Malpractice
- ☐ 365 Personal Injury — Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☒ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
  Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**V. ORIGIN**    (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**    (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause.
Do not cite jurisdictional statutes unless diversity.)

42 USC 1983 ACTION, CIVIL RIGHTS AGAINST CHICAGO POLICE

**VII. REQUESTED IN COMPLAINT:**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $   6,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

**VIII. This case**    ☒ is not a refiling of a previously dismissed action.
☐ is a refiling of case _____, previously dismissed by Judge _____

DATE   11-19-03

SIGNATURE OF ATTORNEY OF RECORD