IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RACHELLE JACKSON, | ) |
| | ) |
| Plaintiff, | ) Case No. 03 C 8289 |
| | ) |
| vs. | ) Judge Mark Filip |
| | ) |
| CITY OF CHICAGO, et al., | ) Magistrate Judge Arlander Keys |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on defendants' motion to compel certain non-parties to produce certain documents and to answer certain deposition questions. For the reasons set forth below, the motion is denied.

### Factual Background

On November 19, 2002, the plaintiff, Rachelle Jackson, was in the area of 4300 S. Princeton in Chicago, when she heard a crash involving a Chicago Police Department squad car and a civilian car. When the squad car exploded into flames, Ms. Jackson, who claims to be trained in nursing and CPR, approached the car to offer assistance. Ms. Jackson noticed that the officer who had been driving the car was injured and unconscious; she also noticed that the officer who had been riding in the passenger side appeared to be dazed and unresponsive. Because she was closer to the passenger side, Ms. Jackson first helped the passenger officer, who turned out to be Officer Kelly Brogan;

according to Ms. Jackson, she dragged Officer Brogan out of the burning car, pulling her out by her shoulders, keeping her arms under Officer Brogan's arms. While Ms. Jackson was offering assistance, emergency medical and police personnel arrived on the scene, as did numerous bystanders. At some point, it became clear that someone had slipped in and removed the service weapon from Officer Brogan's unconscious partner.

The police officers who arrived on the scene questioned Ms. Jackson about the accident, and about the missing service weapon. Although she denied knowing anything about the stolen gun, police officers took her, by squad car, to the police station. According to Ms. Jackson, the police made her turn over her purse, her coat and her shoes, and then held her in a small interrogation room from shortly after the accident on the evening of November 19th until approximately 12:45 a.m. on November 22, 2002, where she was interrogated, tortured, deprived of sleep, food and water, and threatened with violence for two and a half days, until she finally signed a statement saying that she had stolen the gun from Officer Brogan's partner. Ms. Jackson was charged with aggravated battery to a peace officer, robbery, and disarming a peace officer. She remained in Cook County Jail for almost eleven months, until her case went to trial.

Throughout the criminal proceedings, Ms. Jackson was represented by the Office of the Public Defender of Cook County

("CCOPD"), specifically by assistant public defenders Lisa Boughton and Crystal Carbellos. At trial, several bystander witnesses testified, as did a paramedic from the City of Chicago, and most of the witnesses testified that, from their perspective, it appeared that Ms. Jackson had, indeed, attempted to help Officer Brogan. Some witnesses described being pressured by police to say that Ms. Jackson was restraining Officer Brogan so that her accomplice could steal the driver's gun. At the close of the trial, on October 2, 2003, the judge took the case from the jury and entered a directed verdict of not guilty on all charges.

On November 19, 2003, Ms. Jackson sued the City of Chicago and four Chicago Police Officers, alleging violations of her constitutional rights, as well as several related state law claims, including false arrest, malicious prosecution and intentional infliction of emotional distress. Ms. Jackson filed an amended complaint on August 24, 2004, adding Officer Brogan as a defendant.

Of particular import to the motion to compel before the Court, in Count II of her amended complaint, Ms. Jackson alleges that the individual officer defendants "withheld material exculpatory information and evidence from prosecutors and from the court, thus prolonging the criminal prosecution of Rachelle, prolonging her detention, and forcing her to face trial without

the benefit of material exculpatory evidence, thus violating her right to due process under the Fourteenth Amendment to the Constitution." First Amended Complaint, Count II, ¶28. During discovery, Ms. Jackson detailed her allegations with greater specificity. She alleges that the officers falsified: her arrest report, which was apparently signed and/or authored by two of the named officer defendants; a vice case report, which was apparently signed and/or authored by two of the named officer defendants; supplemental police reports prepared by one of the named officer defendants; general progress reports prepared by the named officer defendants; a written statement and oral note from Ms. Jackson and a written statement from Eric Clifton; and a complaint for preliminary hearing signed on behalf of Officer Brogan. See Plaintiff's Second Amended Responses to Defendant Brogan's First Set of Interrogatories, Response No. 1(a)(1-4) (attached as Exhibit A to Defendants' Motion to Compel). She also alleges that the officers failed to include in their reports exculpatory statements and accounts they received from her and from several witnesses, including Arnold Wilson, Charles Nevels, and Eric Clifton.

In an attempt to defend against these allegations, the defendants sought discovery from Lisa Boughton and Crystal Carbellos, the attorneys from the CCOPD who represented Ms. Jackson during the criminal proceedings. The defendants

4

subpoenaed the file of Lisa Boughton from the CCOPD, and deposed both Ms. Boughton and Ms. Carbellos. The CCOPD has not produced Ms. Boughton's file, but it has produced Ms. Carbellos' 513-page file, and Ms. Boughton has also produced approximately 60 pages from her working file in the case. The attorneys have not produced notes they may have written concerning witness reports and conversations they may have had with Ms. Jackson about the case, and Ms. Boughton has never produced her complete, original file.

Adding to the intrigue, at her deposition, Ms. Boughton refused to answer certain questions on privilege grounds. For example, asserting the attorney-client privilege, she refused to answer questions about whether she had talked to Ms. Jackson about the conditions of her detention before she was brought to jail and questions about whether she had talked to Ms. Jackson about any of the events leading up to her arrest. And she refused to answer questions about whether the notes in her working file contained interviews with witnesses or Ms. Jackson, questions about why she did or did not interview certain witnesses, and questions about why she did not call Ms. Jackson at the motion to suppress, asserting that such information was protected under the work-product doctrine.

The defendants have moved to compel Ms. Boughton, Ms. Carbellos and the CCOPD to produce Ms. Boughton's complete file

and both attorneys' handwritten notes, and to compel Ms. Boughton to answer the deposition questions she has, to date, refused to answer.[1] In response to the motion, the CCOPD represented that, after a diligent search, it located Ms. Boughton's file, and it has agreed to produce the file, with the exception of the trial notes; it argues that those notes are protected from discovery by the work product doctrine. With their response, the CCOPD and the attorneys included a privilege log detailing the withheld documents and the privilege claimed for each. Ms. Boughton also continues to claim the attorney-client and work product privileges for the questions at issue during her deposition.

## Discussion

The attorneys here seek to avoid disclosure of materials based upon both the work-product doctrine and the attorney-client privilege. The work product doctrine, announced in *Hickman v. Taylor*, 329 U.S. 495 (1947), and codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, protects "otherwise discoverable documents and tangibles, including an attorney's thoughts and mental impressions, made in anticipation of litigation." *Caremark, Inc. v. Affiliated Computer Services, Inc.*, 195 F.R.D. 610, 612 (N.D. Ill. 2000). A party seeking to assert the doctrine and avoid discovery must establish that the

---

[1] Judge Filip, the district judge to whom this case is assigned, referred the motion to this Court by order dated September 9, 2005.

6

sought after materials: (1) consist of documents and tangible things; (2) were prepared in anticipation of litigation or for trial; and (3) were prepared by or for a party, or by or for a party's representative. *Id.* at 613-14 (quoting 8 Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d §§ 2024 (1994)). Although Rule 26(b)(3) covers only tangibles, *Hickman* is more broadly construed to cover intangibles as well. Thus, oral statements of a witness to an attorney would be protected from disclosure. *Caremark*, 195 F.R.D. at 614. As the court noted in *Caremark*, forcing an attorney "to disclose notes and memos of witness oral statements is particularly disfavored because it tends to reveal the attorney's mental processes." *Id.* at 613 (citing *Upjohn Company v. United States*, 449 U.S. 383, 399 (1981)).

To overcome the work-product doctrine's protection, the party seeking discovery must show that it has a "substantial need for the materials," and that it is unable to obtain "the substantial equivalent of the information without undue hardship." *Caremark,* 195 F.R.D. at 614 (quoting Edna Selan Epstein, *The Attorney-Client Privilege and the Work Product Doctrine* 293 (3rd ed. 1997)). Even upon such a showing, however, an attorney's mental processes are protected from disclosure. *Caremark*, 195 F.R.D. at 614.

In addition to the work-product doctrine, the attorneys here have sought to assert the attorney-client privilege, which generally provides that: "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997); *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). The party seeking to invoke the privilege bears the burden of establishing all of the essential elements, and the privilege "must be invoked on a question-by-question or document by document basis." *Evans*, 113 F.3d at 1461; *White*, 950 F.2d at 430.

Here, the defendants first seek Ms. Boughton's and Ms. Carbellos' trial notes and Ms. Boughton's complete file from Ms. Jackson's criminal case. At the outset, the defendants concede that such materials are covered by the work-product doctrine – and rightly so; the trial notes were prepared by Ms. Boughton and Ms. Carbellos in the course of their representation of Ms. Jackson in anticipation of and during her criminal trial. Thus, the issue before the Court is whether the doctrine's protection should be overcome.

In her complaint, Ms. Jackson alleges that the defendants withheld exculpatory evidence from the prosecutor and the court. Specifically, Ms. Jackson explained in her discovery responses that witnesses Arnold Wilson and Charles Nevels told the police that she was trying to help Officer Brogan at the accident site, and that they did not see her engage in any kind of wrongdoing; yet none of that information made it into the police reports. She further alleges that witness Eric Clifton told police that she was trying to help Officer Brogan, yet that information did not appear in the police reports. She also alleges that the police failed to include her side of the story in their reports. Thus, as the Court understands it, the exculpatory evidence that is alleged to have been withheld consists of various witnesses' stories, all of which corroborate Ms. Jackson's version of the events at the scene of the crash that she was there to help Officer Brogan, not to help someone else steal a police officer's service weapon.

The defendants argue that they are entitled to explore whether Ms. Jackson's attorneys had this information at the time of trial, and that the only way they can do so is by examining the attorneys' trial notes and file materials. The defendants are correct that the law on this issue would allow them to defend against Ms. Jackson's allegations by showing that she and her attorneys knew about the information and evidence she claims was

withheld. The Seventh Circuit held in *Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001), that a constitutional claim against police officers who deliberately withhold exculpatory evidence should be analyzed under the framework set forth in *Brady v. Maryland*, 373 U.S. 83 (1963). And, under *Brady*, evidence cannot be regarded as suppressed if it was fully available to a defendant before or at the time of trial or if the defendant, with the exercise of reasonable diligence, could have obtained the information. *See Boss v. Pierce*, 263 F.3d 734, 740 (7th Cir. 2001)(citing *United States v. Earnest*, 129 F.3d 906, 910 (7th Cir. 1997); *United States v. Morris*, 80 F.3d 1151, 1169-70 (7th Cir. 1996); *United States v. Zambrana*, 841 F.2d 1320, 1340 (7th Cir. 1988)); *United States v. White*, 970 F.2d 328, 337 (7th Cir. 1992).

But the defendants stand on shaky ground when they assert that the attorneys' trial notes are the only means of obtaining the information they seek. Based upon the limited record before the Court, it appears that Mr. Nevels, Mr. Wilson and Mr. Clifton all sat for deposition, and one or more of these witnesses even testified at trial. The very nature of the evidence alleged to have been withheld – the fact that it goes to the heart of the charges against Ms. Jackson and the essence of her defense – makes it difficult to imagine that it would not have come out in any statement or testimony these witnesses may have provided. As

10

such, it would seem to the Court that the defendants have other means of proving that defense counsel knew about the exculpatory evidence these witnesses possessed and handed over to the police, whether because they attended their depositions or because they elicited their testimony at trial, or that, with the exercise of reasonable diligence, they would have learned of that evidence. To the extent it turns out that none of this was the case, the defendants are free to petition the Court to reconsider its ruling. But, for now, the Court is not persuaded that the defendants cannot obtain this information through other means, means that would not require an invasion of any privilege.[2]

In addition to the trial notes and file materials, the defendants seek to compel Ms. Boughton to answer certain questions from her deposition. As explained above, Ms. Boughton refused to answer several questions on the basis of the work-product doctrine, and several questions on the basis of the attorney-client privilege. The questions for which Ms. Boughton invoked the work-product doctrine were: (1) whether notes in her working file contained interviews with witnesses or with Ms. Jackson; (2) why she had Eric Clifton interviewed; (3) why she decided not to call Ms. Jackson at the motion to suppress; and

---

[2] As a practical matter, this may mean that the defendants will be entitled to summary judgment on this aspect of Ms. Jackson's claim. But the limited record before the Court does not permit it to find, at this time, that the defendants are entitled to judgment as a matter of law on the claim that they withheld exculpatory evidence.

(4) why she did not interview or have an investigator interview certain witnesses. The information these questions seek to get at is precisely the type of mental impression/legal theory information the doctrine was intended to protect. Moreover, in *Caremark* – the very case that defendants rely upon to support their argument – the court noted, in discussing the history and policy behind the work product doctrine, that "forcing an attorney to disclose notes and memos of witness oral statements is particularly disfavored because it tends to reveal the attorney's mental processes." 195 F.R.D. at 613 (citing *Upjohn Company v. United States*, 449 U.S. 383, 399 (1981)).

The questions for which Ms. Boughton invoked the attorney-client privilege were: (1) whether she talked to Ms. Jackson about the conditions of her confinement at the police station before she was brought to jail; (2) whether she had any discussions with Ms. Jackson regarding any of the events that led up to her arrest. This information would clearly fall within the scope of the privilege – and the defendants concede as much. Yet they claim that, by suing the defendants and alleging that they held her in violation of her constitutional rights, Ms. Jackson has placed "at issue" the question of what she told her attorneys about her confinement and about the events leading up to her

arrest; in other words, they claim, she has waived the right to assert the privilege.[3]

As the defendants correctly note, "the attorney-client privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation." *Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1175 n.1 (7th Cir. 1995)(citing *Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851 (3rd Cir. 1994)). For this type of "implicit waiver" to apply, however, the party "must affirmatively use privileged communications to defend itself or attack its opponent in the action." *Chamberlain Group v. Interlogix*, No. 01 C 6157, 2002 WL 467153, at *2 (N.D. Ill. March 27, 2002)(citing *Dawson v. New York Life Insurance Co.*, 901 F.Supp. 1362 (N.D. Ill. 1995). For example, an assertion of a good faith defense on the advice of counsel in response to a willful infringement claim directly places defendant's advice of counsel at issue and waives privilege. *See Soloman v. Kimberly-Clark Corp.*, No. 98 C 7598, 1999 WL 89570, at *1 (N.D. Ill. Feb. 12, 1999).

---

[3] In addition to the waiver argument, the defendants argue that the communications between Ms. Jackson and Lisa Boughton are admissions of a party, which are subject to discovery. See Defendant's Motion to Compel, p.8. Yet, they cite no authority to explain how admissions made to an attorney – admissions that would otherwise be protected by the privilege – might become discoverable.

Here, in contrast, Ms. Jackson's allegations do not place any advice of counsel at issue. Without question, any information Ms. Jackson shared with her attorneys about the conditions of her confinement or about the events leading up to her arrest would be relevant to her claims in this lawsuit. But relevance is not the test. The test is whether the claims she raises here place "at issue" those communications or any advice her attorneys may have given her. The defendants have not established that this is the case. Although they would clearly like to know what Ms. Jackson said or did not say to her attorneys on these issues, those communications are privileged and protected; and there is nothing in the parties' submissions or in the record to suggest that her claims involve, or are predicated upon, any advice she may or may not have received from her lawyers. Having found no waiver of the attorney-client privilege, the Court will deny the defendants' motion to compel Ms. Boughton to answer the deposition questions for which she properly invoked the privilege.

## Conclusion

For the reasons explained above, the Court finds that the trial notes and file materials the defendants seek from attorneys Boughton and Carbellos and from the CCOPD are protected by the work product doctrine. Similarly, the Court finds that the discovery the defendants seek from Ms. Boughton, though answers

14

to certain deposition questions, is protected by the work-product doctrine and by the attorney-client privilege. The Court further finds that the defendants have not met their burden of showing that these protections should be breached or that the privilege has been waived. Accordingly, the Court denies the defendants' motion to compel [#109].

Date: December 9, 2005

ENTER:

_____
ARLANDER KEYS
United States Magistrate Judge