IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Rachelle Jackson, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 03 C 8289 |
| v. | ) |
| | ) Judge Mark Filip |
| City of Chicago, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Rachelle Jackson ("Plaintiff" or "Jackson"), has sued the City of Chicago and a number of Chicago Police Officers (collectively "Defendants") alleging violations of her Fourth and Fourteenth Amendment rights, false arrest, malicious prosecution, and intentional infliction of emotional distress. (D.E. 19.) Before the Court are: (1) Defendants' objections to Magistrate Judge Keys's order denying Defendants' motion to compel certain non-parties to produce various documents and to answer various deposition questions (D.E. 124); and (2) Plaintiff's objections to Magistrate Judge Brown's order granting in part Defendants' renewed motion to compel. (D.E. 87.) For the reasons set forth below, the parties' discovery objections are respectfully overruled.

## BACKGROUND

On November 19, 2002, Plaintiff, who asserts she is trained in CPR and nursing, was in the area of 4300 S. Princeton Ave. in Chicago. (D.E. 123 at 1.)[1] Plaintiff heard a crash involving a Chicago Police Department squad car and a civilian car. (*Id.*) When the squad car

---

[1]     The facts are taken from Magistrate Judge Keys's opinion and order. (D.E. 123). The facts of the case are fiercely disputed, and neither this Court nor either of the respective Magistrate Judges has taken any position on which factual assertions are correct.

caught fire, Plaintiff maintains that she approached the squad car to offer assistance. (*Id.*) Plaintiff allegedly noticed that the officer who had been driving the car was injured and unconscious and that Officer Kelly Brogan ("Officer Brogan"), who was seated in the passenger side, was dazed and unresponsive. (*Id.*) Plaintiff states that she was close to the passenger side of the squad car, so she dragged Officer Brogan out of the burning car. (*Id.* at 1-2.) While Plaintiff was purportedly assisting Officer Brogan, emergency medical and police personnel arrived on the scene, as did numerous bystanders. (*Id.* at 2.) At some point, police personnel at the scene noticed that the service weapon of the other officer (*i.e.*, the officer who had been driving) was missing. (*Id.*) Police officers at the scene questioned Plaintiff about the accident and the missing service weapon. (*Id.*) Plaintiff denied knowing anything about the gun. (*Id.*)

At some point, Plaintiff was driven by squad car to the Area 1 Headquarters at 1819 West 39th Street in Chicago for further questioning concerning the gun. (*Id.*) According to Plaintiff, the police held her in a small interrogation room for approximately two and one-half days—from shortly after the accident on the evening of November 19, 2002 until approximately 12:45 a.m. on November 22, 2002. (*Id.*) Plaintiff maintains that, during this detention period, she was interrogated, threatened with violence, and deprived of sleep, food, water, and use of the restroom, until she signed a statement that she had stolen the driver's service weapon. (*Id.*) Plaintiff was subsequently charged with aggravated battery to a peace officer, robbery, and disarming a police officer, and she remained in state custody for almost eleven months awaiting trial on those charges. (*Id.*)

Throughout the criminal proceedings, Plaintiff was represented by the Office of the Public Defender of Cook County ("CCOPD")—and specifically by assistant public defenders Lisa Boughton ("Boughton") and Crystal Carbellos ("Carbellos"). (*Id.* at 2-3.) At trial, several

2

bystander witnesses testified, as did a paramedic from the City of Chicago; most of the witnesses testified that it appeared that Plaintiff was attempting to help Officer Brogan. (*Id.* at 3.) Some witnesses described being pressured by police to say that Plaintiff was restraining Officer Brogan so that her accomplice could steal the other officer's gun. (*Id.*) At the close of the trial, the judge entered a directed verdict of not guilty on all charges. (*Id.*)

Plaintiff filed suit against the City of Chicago and four Chicago Police Officers. (D.E. 1.) Plaintiff subsequently filed a seven-count amended complaint alleging violations of the Fourth and Fourteenth Amendments, and state-law torts of false arrest, malicious prosecution, and intentional infliction of emotional distress.[2] (D.E. 19.)

A number of discovery disputes were referred to Magistrate Judge Brown. (*See, e.g.,* D.E. 51, 65, 77, 83.) Of relevance here, Defendants filed at least three motions relating to Plaintiff's answers to Defendants' First Set of Interrogatories. (*See* D.E. 84 at 1.) Following Defendants' self-styled "third motion to compel," Magistrate Judge Brown ordered, in response to Plaintiff's noncompliance with a prior discovery order of hers, that "[P]laintiff may not further supplement her answers to the interrogatories without obtaining leave of court demonstrating why the information could not have been disclosed in the second amended answers." (*Id.*) Magistrate Judge Brown also ordered that Plaintiff provide more specific answers to certain interrogatories.[3] (*Id.* at 1-2.)

---

[2]     The counts of the Amended Complaint are as follows: Count I–Section 1983 and Fourth Amendment Violations; Count II–Section 1983 and Fourteenth Amendment Due Process Claim; Count III–Section 1985-Conspiracy to Deny Equal Protection and to Obstruct Justice; Count IV–1983 Action Against City for Failure to Properly Instruct, Supervise, Control & Discipline; Count V–False Arrest–State Claim Against City and Officers; Count VI–Malicious Prosecution-State Claim Against City and Officers; and Count VII–Intentional Infliction of Emotional Distress Against City and Officers. (*See* D.E. 19.)

[3]     Magistrate Judge Brown ordered that Plaintiff's answers include page and paragraph cites to support the allegations concerning false reports, false statements, and perjury. (D.E. 84 at 1-2; *see generally* D.E. 82.)

Defendants also filed a motion to compel CCOPD, Boughton, and Carbellos to produce certain requested documents and to answer certain deposition questions (D.E. 109); Defendants' motion was referred to Magistrate Judge Keys. (D.E. 111.) During discovery, Carbellos's file and approximately 60 pages of Boughton's file were produced. (D.E. 123 at 5.[4]) Defendants also subpoenaed Boughton's file and deposed Boughton and Carbellos. (*Id.* at 4-5.) Subsequent to the filing of the motion to compel, CCOPD produced Boughton's file, save for her trial notes, which CCOPD maintains are work product. (*Id.* at 6.) However, neither Boughton nor Carbellos produced notes that they may have written concerning witness reports and conversations they may have had with Plaintiff about the case. (*Id.* at 5.) Furthermore, Boughton, when deposed, refused to answer certain questions on privilege grounds and continues to assert privilege in response to Defendants' motion to compel. (*Id.*) CCOPD, Boughton, and Carbellos have submitted a privilege log detailing the withheld documents and the privilege claimed for each. (*Id.*)

Magistrate Judge Keys denied Defendants' motion to compel. (*See id.*) With respect to Boughton's and Carbellos's handwritten notes, Judge Keys determined that the notes were protected by the work product doctrine and Defendants had not shown that the handwritten notes were "the only means of obtaining the information that [Defendants] seek." (*Id.* at 10.) Specifically, Magistrate Judge Keys stated that

> the defendants stand on shaky ground when they assert that the attorneys' trial notes are the only means of obtaining the information they seek [*e.g.*, information about what exculpatory evidence Plaintiff and her attorneys were apprised of prior to Plaintiff's trial]. Based on the limited record before the Court, it appears that Mr. Nevels, Mr.

---

[4]    The parties' briefs are not pellucid about what has and has not been produced from the files of the Public Defender's Office and the respective Assistant Public Defenders. The recitation herein is the Court's best sense of what was and was not produced.

4

Wilson, and Mr. Clifton [the putative providers of exculpatory information] all sat for deposition, and one or more of those witnesses even testified at [Plaintiff's criminal] trial. The very nature of the evidence alleged to have been withheld – the fact that it goes to the heart of the [criminal] charges against Ms. Jackson and the essence of her defense – makes it difficult to imagine that it would not have come out in any statement or testimony these witnesses may have provided. As such, it would seem to the Court that the defendants have other means of proving that [Plaintiff's criminal] defense counsel knew [at the time of Plaintiff's criminal trial] about the exculpatory evidence these witnesses possessed and handed over to the police, whether because . . . [defendants or their representatives attended the depositions of the witnesses or were aware of their testimony at the criminal trial, or could have learned the relevant information] . . . with the exercise of reasonable diligence.

(*Id.* at 11.) Judge Keys also stated that,

[t]o the extent it turns out that none of this was the case, the defendants are free to petition the Court to reconsider its ruling. But, for now, the Court is not persuaded that defendants cannot obtain this information through other means . . . .

(*Id.*) In this regard, Judge Keys added that, "[a]s a practical matter, this may mean that the defendants will be entitled to summary judgment on this aspect of Ms. Jackson's claim. But the limited record before the Court does not permit it to find, at this time, that the defendants are entitled to summary judgment as a matter of law" on the claim. (*Id.* at 11 n.2.)

Magistrate Judge Keys also denied Defendants motion to compel Boughton to answer certain deposition questions—such as why certain witnesses were and were not interviewed, and why Ms. Jackson was not called at a suppression hearing in the underlying criminal case. (*Id.* at 11-12.) Magistrate Judge Keys explained that the answers to various of the defense questions were protected as "opinion work product" under the work product doctrine.[5] (*See id.* at 12 ("The information these questions seek to get at is precisely the type of mental impression/legal theory information that the [work product] doctrine was intended to protect.").) Magistrate Keys

---

[5]     The questions Boughton refused to answer on work product privilege grounds were: (1) whether notes in Boughton's file contained interviews with Plaintiff or with witnesses; (2) why Boughton had Eric Clifton interviewed; (3) why Boughton did not call Plaintiff at the motion to suppress in the underlying criminal case; and (4) why Boughton did not have certain witnesses interviewed. (D.E. 123 at 11-12.)

determined that the remaining questions were within the scope of the attorney-client privilege[6] (*id.* at 12) and that Plaintiff did not waive the privilege because she did not "affirmatively use privileged communications to . . . attack . . . [her] opponent in the action." (*Id.* at 13 (internal quotation marks and citations omitted).)

## STANDARD OF REVIEW

A party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things." Fed. R. Civ. P. 26(b)(1). "A party may file a motion to compel discovery under Rule 37 where another party fails to respond to a discovery request or where the party's response is evasive or incomplete." *United States v. Ligas*, No. 04 C 930, 2006 WL 1302468, at *4 (N.D. Ill. May 10, 2006) (Holderman, J.) (citing Fed. R. Civ. P. 37(a)(2)-(3); further internal quotation marks and citation omitted). A court has broad discretion under the federal rules to resolve discovery disputes, and a motion to compel discovery is granted or denied at the discretion of the trial court. *See, e.g., Shapo v. Engle*, No. 98 C 7909, 2001 WL 629303, at *2 (N.D. Ill. May 25, 2001) (Kocoras, J.) (citing *Meyer v. S. Pac. Lines*, 199 F.R.D. 610, 611 (N.D. Ill. 2001)). Rule 37(b) provides that a court may impose sanctions—including deeming facts admitted or striking claims or defenses—for failing to comply with a discovery order. *See* Fed. R. Civ. P. 37(b)(2). Precedent instructs that the court addressing compliance with its discovery orders has "especially broad" discretion to address improper compliance with such discovery orders or to otherwise impose Rule 37 sanctions. *Doe*

---

[6] The questions Boughton refused to answer on attorney-client privilege grounds were: (1) whether Boughton talked to Plaintiff about the conditions of Plaintiff's confinement at the police station before she was brought to jail; and (2) whether Boughton had any discussions with Plaintiff regarding any of the events leading up to Plaintiff's arrest. (D.E. 123 at 12.)

6

*by & Through G.S. v. Johnson*, 52 F.3d 1448, 1464 (7th Cir. 1995) (citations and internal quotation marks omitted).

Of particular relevance for present purposes, magistrate judges (just like district judges) are granted broad discretion in addressing and resolving discovery disputes. *See, e.g., Weeks v. Samsung Heavy Indus., Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997). "The district court's review of any discovery-related decisions made by the magistrate judge is governed by Rule 72(a) of the Federal Rules of Civil Procedure, which provides: 'The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.' Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1). The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Id.*

## ANALYSIS

I.  Magistrate Judge Keys Correctly Denied Defendants' Motion to Compel With Respect to the Deposition Questions

Defendants seek to compel Boughton to answer six deposition questions. (D.E. 112 at 6.) The Magistrate Judge determined that Boughton properly refused to answer four questions on work product grounds and two questions on attorney-client privilege grounds. (D.E. 123 at 11-12.) As explained below, Defendants have not demonstrated any error in the Magistrate's order concerning the deposition questions.

A.  Defendants Have Failed to Establish Error Concerning Judge Keys's Ruling That Answers to Four Deposition Questions Are Precluded by Work Product Privilege

The questions Boughton refused to answer on work product privilege grounds were: (1) whether notes in Boughton's file contained interviews with Plaintiff or with witnesses; (2) why

7

Boughton had Eric Clifton interviewed; (3) why Boughton did not call Plaintiff at the motion to suppress; and (4) why Boughton did not have certain witnesses interviewed (respectively "Questions One, Two, Three, and Four"). (D.E. 123 at 11-12.) Defendants have not demonstrated any clear error in Magistrate Judge Keys's rulings concerning such questions.

"The work product doctrine reflects the strong public policy against invading the privacy of an attorney's course of preparation." *In re Sealed Case*, 856 F.2d 268, 273 (D.C. Cir. 1988) (citing *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)). *Hickman* extended the work product immunity "to oral statements made by witnesses to attorneys 'whether presently in the form of mental impressions or memoranda.'" *In re Sealed Case*, 856 F.2d at 270 (quoting *Hickman*, 329 U.S. at 512). "Rule 26(b)(3) distinguishes between 'ordinary' work product (also referred to as 'fact' work product) and 'opinion' work product. Fact work product consists of factual material and opinion work product comprises the mental impressions, conclusions, opinions, or legal theories of an attorney or a party's representative." *United States ex. rel. Yannacopolous v. Gen'l Dynamics*, 231 F.R.D. 378, 385 (N.D. Ill. 2005) (citation omitted). A party may obtain discovery of ordinary work product only upon a showing of substantial need for the work product and proof of undue hardship if forced to obtain the requested work product in some other way. *See Logan v. Comm. Union Ins. Co.*, 96 F.3d 971, 976 (7th Cir. 1996). Neither the Supreme Court nor the Seventh Circuit has identified the precise standard for overcoming opinion work product; however, precedent instructs that opinion work product "cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship . . . a far stronger showing of necessity and unavailability by other means . . . would be necessary to compel disclosure." *Upjohn Co. v. United States*, 449 U.S. 383, 401-402 (1981); *accord Logan*, 96 F.3d at 976 n.4 (citing *Upjohn*, 449 U.S. at 401-402).

8

Question One of the proposed deposition questions relates to the content of notes in Boughton's file. As explained further below, Defendants have failed to demonstrate even that they are entitled to the attorney-notes themselves, much less that they are entitled to go further and probe the attorney's understanding of her work product. Boughton's account of her notes would (over and above concerns about any work product reflected in the drafting of the notes themselves) reflect her mental prioritizing and case-strategy-formation, all of which the work product doctrine is designed to protect.

This is not to say that Defendants could not ask Plaintiff or other putative providers of exculpatory information if they were aware of the various allegedly exculpatory information at the time of trial. *See generally, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney"). Defendants also may be able to elicit much of this same information from Boughton, as she will have no attorney-client privilege concerning her communications with putative defense witnesses. However, Defendants have failed to show that Judge Keys erred in his assessment that Defendants were not entitled to question Boughton about the contents of her trial-preparation notes.

With regard to Questions Two and Four, which address Boughton's decisions with respect to witness interviews, Judge Keys correctly explained that such questions "seek to get at . . . precisely the type of mental impression/legal theory information the [work product privilege] was intended to protect." (D.E. 123 at 12 (citing *Caremark, Inc. v. Aff. Comp. Servs., Inc.*, 195 F.R.D. 610, 613 (N.D. Ill. 2000); *Upjohn Co.*, 449 U.S. at 399).) Even if the Court applies the more lenient standard for obtaining discovery of ordinary work product (as opposed to opinion work product), Defendants have not shown substantial need to question Boughton about issues

9

of trial strategy. Defendants are entitled to obtain discovery concerning underlying facts, but Defendants have not demonstrated a substantial need to know *why* Boughton made certain strategic decisions in her defense of the criminal case.

Question Three addresses why Boughton did not call Plaintiff at the suppression hearing. This question goes to Boughton's mental processes and thus is protected as opinion work product. Defendants have not made a colorable argument that they have a substantial need for the information sought by this question—Defendants only make a generic argument with respect to "substantial need" that, with all respect, largely ignores the high standard that would need to be met before such information could properly be required to be disclosed. (*See* D.E. 124 at 13.) Simply put, Defendants have not shown a legitimate basis to inquire as to why Plaintiff was not called at a hearing concerning whether evidence should have been suppressed—because of putative search and seizure violations by the government—in the underlying criminal case.

Defendants also maintain that the work product doctrine does not apply at all because Plaintiff's criminal case is over and work product protection does not extend to concluded litigation. (D.E. 124 at 11 (citing *Research Inst. for Med. & Chem., Inc. v. Wis. Alumni Research Found.*, 114 F.R.D. 672, 680 (W.D. Wis. 1987)).) With all respect, this position is not persuasive in light of recent Seventh Circuit teaching. *See, e.g., Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006) ("A majority of courts have held . . . . that the privilege endures after termination of the proceedings for which the documents were created, especially if the old and new matters are related.") (collecting circuit precedents). To be sure, the statement in *Hobley* is technically *dictum*, because the issue was not challenged there; however, the Seventh Circuit's statement in recent *dictum* that is on-point, and the *dictum* is supported by two federal appellate citations from other circuits. The Court will follow that federal appellate precedent and the

10

Seventh Circuit's recent *dictum* over a relatively old district court decision addressing the issue. *See generally United States v. Foxworth*, 8 F.3d 540, 545 (7th Cir. 1993) (holding that dictum from superior court can be a meaningful source of guidance if it speaks to the issue at hand); *accord, e.g., Humphrey's Executor v. United States*, 295 U.S. 602, 627 (1935) (similar).

Defendant also suggests that Plaintiff has waived the work product privilege by putting the content of her attorneys' work product at issue. (D.E. 112 at 7; D.E. 124 at 10.) However, "[i]t is well-established that the work-product privilege may be invoked by either the client or the attorney. An attorney has an independent interest in privacy, even when the client has waived its own claim, as long as invoking the privilege would not harm the client's interests. *Hobley*, 433 F.3d at 949 (citing *In re Special Sept. 1978 Grand Jury II*, 640 F.2d 49, 62 (7th Cir. 1980); *In re Sealed Case*, 29 F.3d at 718). Assuming *arguendo* that Plaintiff had waived her right to assert the privilege, Plaintiffs' former criminal defense attorneys may and have asserted the privilege on their own behalf.

B.    Defendants Have Failed to Demonstrate Any Error Concerning Magistrate Judge Keys's Ruling on Attorney-Client Privilege Regarding Two Deposition Questions

The questions that Boughton refused to answer on attorney-client privilege grounds were: (1) whether Boughton talked to Plaintiff about the conditions of Plaintiff's confinement at the police station before she was brought to jail; and (2) whether Boughton had any discussions with Plaintiff regarding any of the events leading up to Plaintiff's arrest. (D.E. 123 at 12.) Defendants have failed to demonstrate any error concerning Magistrate Judge Keys's determination that Boughton was protected from answering these questions by the attorney-client privilege.

The attorney-client privilege generally provides that: "'(1) [w]here legal advice of any

11

kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except [if] the protection be waived.'" *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (quoting 8 John Henry Wigmore, Evidence in Trials at Common Law § 2292 (John T. McNaughton rev. 1961)). The attorney-client privilege is waived when the client's claim or defense puts the attorney's advice at issue, not merely by placing the factual knowledge of the attorney at issue. (*See* D.E. 123 at 14); *accord Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 863 (3d. Cir. 1994) (collecting cases); *Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1175 n.1 (7th Cir. 1995) (citing *Rhone-Poulenc*, *supra*)). Defendants maintain that Count II of the Complaint places the content of attorney-client communications "at issue" and thus waives the privilege with respect to communications relating to Plaintiff's claim. (D.E. 124 at 6-8 (stating that Count II puts attorney-client communications at issue because a *Brady* claim is contingent upon knowledge of exculpatory information).) However, Defendants' waiver argument is too generic and does not directly address the deposition questions at issue, neither of which relates to the heart of Plaintiff's purported *Brady* claim. Defendants also fail to cite *any* authority for their absolutist assertion that the advancing of a Brady claim *per force* constitutes a waiver of the attorney-client privilege. In the absence of any more specific argument or citation of authority, the Court is unpersuaded by Defendants' assertion that Magistrate Judge Keys's assessment of the scope of Plaintiff's claim was clearly erroneous or otherwise infected with reversible error, as explained further below.

The first putative deposition question addressed by Magistrate Judge Keys's ruling on attorney-client privilege was a question which asked Boughton "whether she talked to [Plaintiff]

12

about the conditions of her confinement before she was brought to jail." Because Plaintiff

alleges that the conditions of her confinement amounted to unconstitutional infliction of

punishment, Defendants are entitled to discovery from Plaintiff as to what happened while she

was detained. However, none of Plaintiff's claims places "at issue" the conversations she may

have had with her attorney about the conditions of her confinement at the police station.

The second question asked Boughton "whether she had any discussions with [Plaintiff]

regarding any of the events that led up to her arrest." Even if Defendant is correct that Plaintiff,

by virtue of Count II of the Amended Complaint, has put her and her attorneys' knowledge

concerning exculpatory *Brady* evidence "at issue," she did not put attorney-client

communications at issue. At best, Defendants have demonstrated that they were entitled to ask

specific questions about Boughton's knowledge of exculpatory information, not that they may

generally probe the content of attorney-client conversations with broadly worded, open-ended

questions. Furthermore, Plaintiff has not placed communications "at issue," as defined by

precedent, because her claims do not address any advice she received from her attorney. *See*,

*e.g.*, *Garcia*, 58 F.3d at 1175 & n.1 (holding that a plaintiff's "fair representation" claim against

his union puts advice that union representative provided to Plaintiff at issue); *Rhone-Poulenc*, 32

F.3d at 863 (holding that attorney-client communication is not placed at issue unless it is an

essential element of a claim or defense, such as if defendant asserts an advice of counsel

defense); *Southwire Co. v. Essex Group, Inc.*, 570 F. Supp. 643, 650 (N.D. Ill. 1983) (attorney-

client communication at issue because defendant asserted estoppel defense and plaintiff needed

to show that defendant relied upon its attorney rather than plaintiff's representations in order to

rebut asserted defense). To the extent that Plaintiff is asserting a *Brady* claim in Count II,

Boughton's underlying knowledge concerning the exculpatory evidence might well not be

13

protected—*see, e.g., Upjohn*, 449 U.S. at 395 ("The protection of the privilege extends only to *communications* and not to facts") (emphasis in original; internal quotation marks and citation omitted)—but Defendants' questions do not directly address knowledge, they address communications between Plaintiff and her criminal counsel.

For all of these reasons, the Court respectfully rejects the Defendants' contentions that they have shown any reversible error concerning Magistrate Judge Keys's deposition rulings.

II.     Defendants Have Failed to Show Any Error Concerning Magistrate Judge Keys's Rulings Concerning the Documents of the Public Defender's Office

Magistrate Judge Keys wrote at some length in his opinion concerning the disputed documents of the Public Defender's Office. This Court will not address the subject at great length, as it would be difficult to improve on Judge Keys's thoughtful treatment of this topic.

In summary, Judge Keys noted that Plaintiff was advancing a putative *Brady* claim in Count II. He further found that, whatever legal defects might otherwise potentially exist in that *Brady* claim (*see* Judge Keys's opinion, D.E. 123 at 11 n.2), Defendants had failed to establish one of the prerequisites to obtaining material protected by the work product doctrine—namely, that the movant could not obtain through other avenues the substantial equivalent of information reflected in the work-product without undue hardship. (*See id.* at 7, 10-11.) As a result, Judge Keys found, production was unwarranted. (*See id.* at 10-11.)

In this regard, Judge Keys explained that it seemed apparent, based on the limited record presented by the Defendant-movants, that they had other readily and reasonably available avenues by which to learn whether and what exculpatory information had been presented to Plaintiff's attorneys by witnesses such as Mr. Nevels, Mr. Wilson, and Mr. Clifton. (*Id.* at 10.) These avenues included prior depositions of these individuals (which seemingly had taken place

14

in connection with the underlying state criminal prosecution for some reason) as well as trial testimony in the underlying criminal proceeding. (*Id.* at 10-11.)[7] Judge Keys even expressly invited the Defendants to file a motion to reconsider his ruling if his reading of the limited background information provided to him was incorrect. (*Id.* at 11.)

Defendants never filed such a motion to reconsider, and their treatment of this issue in this Court is insufficient to establish that Judge Keys committed any error in his discovery ruling. Even where potentially relevant material or information may be reflected in work product of a third party, the law's solicitude for work product is such that another party seeking to review that work product must show, at a minimum, that the seeking party would be subjected to undue hardship if forced to obtain the information reflected in the work product in some other way(s). *See, e.g., Logan,* 96 F.3d at 976; *Caremark,* 195 F.R.D. at 614. In affirming Judge Keys, this Court does not suggest (nor does it understand Judge Keys's opinion to have suggested) that no defendant in the position of Defendants could ever make a compelling showing that the sort of work product materials or information sought here should be produced. (For example, if there were dozens of witnesses who potentially provided exculpatory evidence, that might well fairly bear on the Seventh Circuit's prescribed "undue hardship" analysis.) However, here, there appear to be less than a handful of individuals who potentially provided the relevant information to the Public Defender's Office, and some or perhaps all of them testified about the incidents before the criminal trial had concluded. There also is no allegation that they are unavailable for deposition in this case. Furthermore, and as explained above, there are relevant non-privileged questions that could be posed (or at least could have been posed—the

---

[7]     Defendants also do not assert that they could not have re-deposed these individuals in connection with this case to determine what, if any, exculpatory evidence they provided to the Public Defender's Office.

record is unclear as to whether they actually were asked) to Plaintiff or her former counsel. Under the circumstances, Defendants simply have failed to discharge their burden of demonstrating that Judge Keys's calibration of the undue hardship assessment was incorrect or otherwise an abuse of discretion.

For all of these reasons, the Court declines the invitation to second-guess Judge Keys's assessment of the propriety of turning over the work product of the Public Defender's Office or some redacted subset of information contained therein to Defendants. Defendants' objections in this regard are respectfully rejected.

III.    Plaintiff's Objections to Magistrate Judge Brown's Order Are Also Overruled

Plaintiff raises three objections to Magistrate Judge Brown's order (D.E. 84.). First, Plaintiff maintains that Defendants filed a motion to compel without including a statement of attempts at resolution as required by Local Rule 37.2. (D.E. 87 at 2.) Second, Plaintiff claims that the order requires Plaintiff to provide an unreasonable level of detail in her responses to Defendants' interrogatories. (*Id.* at 3.) Finally, Plaintiff argues that Magistrate Judge Brown erroneously entered "an exclusion order, barring [P]laintiff from ever asserting evidence not listed in extreme detail in the responses." (*Id.*) All of Plaintiff's objections are respectfully rejected.

On March 29, 2005, during the course of a lengthy hearing, Magistrate Judge Brown determined that Plaintiff's responses to Defendants' first set of interrogatories were inadequate for a number of (sometimes interrelated) reasons: (1) the responses included a number of general objections, which are disfavored by the federal rules (D.E. 82 at 3); (2) the responses did not include sufficient information such that Defendants could adequately prepare for trial (*see, e.g.,* *id.* at 4-5, 7-11, 13); (3) Plaintiff was attempting to "hedge her bets" so she could introduce

additional evidence or unfairly change theories at a later date (*see, e.g., id.* at 5-6, 13); and (4) the responses included a great deal of vague and/or extraneous statements that did not fairly respond to the questions posed. (*Id.* at 15, 17 ("The defendants have a good point about your answers to [the] interrogatories. They are not sufficient. They are full of hedges and full of a lot of gobbledygook.").) At the hearing, when Magistrate Judge Brown expressed dismay over the quality of Plaintiff's responses—and, in particular, their specificity—one of Plaintiff's counsel eventually suggested that any amended responses could cite to pages of relevant dispositions so as to address the identified deficiencies in the responses. (*See id.* at 12 (Mr. Alexander: "So, I mean, I don't know – I don't honestly know how to answer this except maybe attach the depositions, your Honor, or cite to the pages of the depositions." Court: "Cite to the pages. That's the way to do it." Mr. Alexander: "I can do that, your Honor. I don't understand – . . . – the purpose of it, but we're willing to do it.").)

Plaintiff filed an amended response (D.E. 101, Ex. C); Defendants filed a third motion to compel in response thereto. (D.E. 75.) The crux of Defendants' third motion before Judge Brown was that Plaintiff's amended responses did not comport with Judge Brown's March 29, 2005 order. (*See id.* ¶ 7.) Defendants' motion identified a number of responses that they maintain did not comport with the magistrate judge's order and Plaintiff's in-court representations because the responses lacked specificity and/or were not supported by accurate citations to deposition transcripts. (*See id.* ¶¶ 8-20.)

Plaintiff's objections to Magistrate Judge Brown's ruling are respectfully rejected. First, the Court notes that Plaintiff's claim that Defendants failed to comply with Local Rule 37.2, which prescribes consultation before the filing of certain discovery motions, is not well-taken. Given the posture of this dispute, Defendants are correct in stating that the "third motion to

17

compel" was inartfully captioned and more closely resembles a motion to enforce a discovery order than a standard motion to compel. (*See* D.E. 101 at 3 n.1.) Local Rule 37.2 does not require a conference prior to bringing a motion to enforce a prior discovery order of the magistrate judge. *See, e.g., 3 Com Corp. v. Elec. Recovery Specialists, et al.*, 99 C 6981, 2002 WL 570636, at * 2 (N.D. Ill. Apr. 15, 2002) (Bobrick, M.J.) ("There is no necessity for a Local Rule 37.2 conference when the discovery dispute deals with a party's failure to comply with an order requiring discovery responses."); *see also Finwall v. City of Chicago*, ___ F.R.D. ___, No. 04 C 4663, 2006 WL 1491316, at *5 (N.D. Ill. May 31, 2006) (Cole, M.J.) (no obligation to have L.R. 37.2 conference when party is seeking sanction such as exclusion of expert witnesses for violation of local rules and judicial discovery order).[8]

Second, Plaintiff maintains that Judge Brown's order was "an abuse of the discovery process" because of the level of detail Plaintiff was required to provide in her responses to Defendants' interrogatories. This argument likely was waived before Magistrate Judge Brown when Plaintiff's counsel himself suggested that the provision of page numbers from depositions might provide more detail (*See* D.E. 82 at 12), as the magistrate judge explained was required. *See, e.g., Knox v. Cook County Sheriff's Police Dep't*, 866 F.2d 905, 908 (7th Cir. 1988) ("In this Circuit, it 'is well-settled law that a party cannot complain of errors which it has committed, invited, induced the court to make, or to which it has consented.'") (quoting *Int'l Travelers*

---

[8]     Magistrate Judge Brown's willingness to resolve the merits of the motion alleging non-compliance with her prior discovery order likely also would independently be justified under the doctrine of futility. The doctrine of futility applies to Rule 37.2 conferencing requirements—*see, e.g., Finwall v. City of Chicago*, ___ F.R.D. ___, No. 04 C 4663, 2006 WL 1491316, at *5 (N.D. Ill. May 31, 2006) (Cole, M.J.) (collecting authorities)—and, given Plaintiff's failure to abide by her representations made through counsel at the extended hearing concerning the second motion to compel, it appears unlikely that further dialogue would have been productive. *See also* D.E. 101 at 2 (account of prior efforts of parties to resolve dispute, at least in the view of police officers). The Court need not definitively resolve this issue, however, as no Rule 37.2 conference was required under the circumstances presented.

*Cheque Co. v. Bankamerica Corp.*, 660 F.2d 215, 224 (7th Cir. 1981)); *see also Johnson v. Zema Sys. Corp.*, 170 F.3d 734 (7th Cir. 1999) (affirming similar waiver rule for purposes of appellate review of Magistrate's order); *United States v. City of Rock Island, Ill.*, 182 F.Supp.2d 690, 694 (C.D. Ill. Apr. 23, 2001) (objections not raised before Magistrate Judge are waived for purposes of District Court review).

Moreover, and independently, even if the waiver issue is ignored, Plaintiff offers no persuasive basis to question the substance of Magistrate Judge Brown's ruling. Plaintiff has not offered any standard by which to assess the putative clear error in Judge Brown's order except for the claim that the level of detail had not been required in the prior experience of Ms. Jackson's attorneys. (D.E. 87 at 3.) Given the self-serving and indeterminate nature of any such standard, the argument is not persuasive to ground a clear error challenge. In this regard, the Court also notes that, in its experience in the federal courts, Magistrate Judge Brown's directive—particularly in response to some Plaintiff's boilerplate and evasive responses that she previously condemned—is not outside the mainstream at all. Plaintiff asserted, for example, that various reports and statements were false, and the judge required Plaintiff to assert with specificity what the alleged falsehoods were. That is not, in this Court's experience at least, an extraordinary requirement for an interrogatory answer. Rule 33 provides that "[e]ach interrogatory shall be answered separately *and fully* in writing under oath." Fed. R. Civ. P. 33(b)(1) (emphasis added); *see also Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D. Pa. 1996) ("[p]arties must provide true, explicit, responsive, complete, and candid answers to interrogatories) (citing Fed. R. Civ. P. 33(b)(1)). Caselaw reflects that Rule 33 demands reasonable and meaningful specificity to ensure the adequacy of responses. *See, e.g., Smith v. Logansport Community School Corp.*, 139 F.R.D. 637, 650 (N.D. Ind. 1991) (collecting

19

authorities); *Am. Rockwool v. Owens-Corning Fiberglass Corp.*, 109 F.R.D. 263, 266 (E.D.N.C. 1985). It appears, upon a full review of the underlying proceedings, that Judge Brown required simply compliance with that standard on the facts presented. Furthermore, the Court finds it inappropriate to second-guess Magistrate Judge Brown's discovery order given that she was best-positioned—after patiently conducting a painstaking response-by-response review of Plaintiff's interrogatory responses in open court—to determine what level of detail was necessary to ensure that Plaintiff provided fair and appropriate responses to the relevant interrogatories posed. *See, e.g., Johnson*, 52 F.3d at 1464.

Finally, Plaintiff maintains that the Magistrate Judge "entered an exclusion order, barring [P]laintiff from ever asserting evidence not listed in extreme detail in the responses." (D.E. 87 at 3.) Plaintiff's characterization of the challenged discovery order is unduly negative—and, with all respect, it is not a fair rendition of the order of Magistrate Judge Brown. She only ruled that "[P]laintiff may not further supplement her answers to the interrogatories without obtaining leave of court demonstrating why the information could not have been disclosed in the second amended answers." (D.E. 84 at 1.) The Court sees nothing "abusive" about this order, especially given the fact that the Federal Rules permit a wide range of sanctions for noncompliance with discovery orders, up to and including dismissal of an action. *See, e.g.*, Fed. R. Civ. P. 37; *see also Dotson v. Bravo*, 321 F.3d 663, 668 (7th Cir. 2003). In contrast to the harsh sanction of dismissal or automatic exclusion of omitted material, Judge Brown acted in her characteristically gracious and patient fashion, in expressly reserving the possibility that further amendment was at least *possible*—at least if there were a specific showing of good cause advanced. Thus, the claim of an exclusion order is an unfair one; Magistrate Judge Brown issued no such ruling in the case.

20

## CONCLUSION

For the reasons discussed above, the objections of the parties to the discovery rulings of

Magistrate Judges Brown and Keys (D.E. 87 and D.E. 124) are respectfully rejected.

Mark Filip
United States District Judge
Northern District of Illinois

Date: 7/31/06