IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RACHELLE JACKSON, | ) |
| Plaintiff, | ) No. 03 C 8289 |
| | ) Judge Castillo |
| v. | ) |
| CITY OF CHICAGO, *et al*, | ) |
| Defendants. | ) |

## DEFENDANTS' RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants Patrick McCormack, Robert Vahl, Steven Barsch, Michael O'Donnell and Kelly Brogan, by one their attorneys, move this Court pursuant to Rule 50 for Judgment as a Matter of Law and state as follows:

## INTRODUCTION

This case arises from the events, which took place on November 19, 2002. On that day, Officer Kelly Brogan and Officer Kristen Villanueva were involved in a car accident when their squad car was t-boned by a civilian vehicle. After the accident, Plaintiff, Rachelle Jackson and Pierre Mangun came to the scene. Officer Villanueva's gun was stolen and Plaintiff was eventually arrested after she was identified by Eric Clifton as a person who placed Officer Brogan in a "full nelson." Plaintiff was arrested on scene by Defendant McCormack and transported by Officers Barsch and Vahl to Area One where she was detained. Plaintiff does not dispute she placed Officer Brogan in a "full nelson" (although disputes the term). Officer Brogan also reported to detectives and Assistant State's Attorney John Brassil that, in addition to plaintiff grabbing at her star and gun, she was placed in a "full nelson." Plaintiff was ultimately

charged with aggravated battery, attempted disarming and attempted robbery. Plaintiff was eventually acquitted on the charges at her criminal trial.

Plaintiff also contends that she was held unconstitutionally for over forty-eight hours prior to her probable cause hearing[1]. Defendants do not move for judgment as a matter of law on this claim. Plaintiff and Defendants dispute when exactly Plaintiff was arrested. Defendants contend Plaintiff was arrested on scene. Plaintiff asserts she came to Area One as a witness - not an arrestee. Plaintiff has not presented any evidence at what date and time during her stay at Area One did she become an arrestee. As such, judgment as a matter of law on this claim, for either side, is inappropriate.

## CLAIMS

After summary judgment the following claims remained for Plaintiff to present at trial:

1.) Defendants falsely arrested her in violation of her constitutional rights;

2.) Defendants coerced a confession in violation of her constitutional rights;

3.) Defendants used that confession at trial in violation of her constitutional rights;

4.) Defendants subjected her to unreasonable conditions during her time in police custody in violation of her constitutional rights;

5.) Defendants held her in police custody for an unreasonable amount of time in violation of her constitutional rights;

6.) Defendants Patrick McCormack and Michael O'Donnell conspired to violate her civil rights because of her race;

7.) Defendants falsely arrested her in violation of Illinois State law;

8.) Defendants maliciously prosecuted her in violation of Illinois State law; and

---

[1] Defendants dispute that Plaintiff has plead this claim in her complaint or amended complaint. (See Amended Complaint).

9.) Defendants intentionally inflicted emotional distress upon her in violation of state law.

Defendants move for judgment as a matter of law on the following claims in regard to the following Defendants:

1.) Defendants Barsch and Vahl are entitled to judgment as a matter of law on all claims;

2.) Defendant Brogan is entitled to judgment as a matter of law on all claims;

3.) All Defendants are entitled to judgment as a matter of law on the coerced confession claims;

4.) Defendants McCormack and O'Donnell are entitled to judgment as a matter of law on the §1985 conspiracy claim;

5.) Defendants McCormack and O'Donnell are entitled to qualified immunity on the false arrest claims; and

6.) Plaintiff is only entitled to nominal damages on her length of detention claim.

In support of their argument, Defendants state as follows:

## ARGUMENT

### I. DEFENDANTS STEVE BARSCH AND ROBERT VAHL ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ALL OF PLAINTIFF'S CLAIMS.

Barsch and Vahl did not commit any of the violations Plaintiff has alleged. First, Barsch and Vahl committed no Fourth Amendment violation. "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) (emphasis in original). Here, it is undisputed that Barsch and Vahl did not arrest the Plaintiff. According to Defendants, McCormack arrests Plaintiff on the scene after he spoke with Eric Clifton. Barsch and Vahl are simply contacted to transport the Plaintiff to Area One Detective Division and complete

3

paperwork. According to Plaintiff, Ms. Jackson was transported to Area One as a witness and was not arrested until sometime later. In fact, she has argued that as of 5:15 A.M. (the time the General Offense Case Report is signed by Barsch and Vahl) on November 20, 2002, she was still considered a witness, who was free to leave. Under either Defendants' or Plaintiff's timing of her arrest, at the time Ms. Jackson was with Barsch and Vahl, there is no evidence that Barsch and Vahl violated Plaintiff's Fourth Amendment rights.

Under the Fourth Amendment, a seizure occurs when an officer "by means of physical force or show of authority has in some way restrained the liberty of a citizen." *United States v. Mendenhall*, 446 U.S. 544, 552, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (internal quote omitted). A person is "seized" under the Fourth Amendment "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* Once McCormack arrests the Plaintiff on scene, "the constitutional violation she alleges had already taken place." *Id.* Here, Barsch and Vahl merely transport the Plaintiff to Area One and cannot be held liable for a false arrest. *Morfin v. City of East Chicago,* 349 F.3d 989 (7th Cir. 1994); *Maltby v. Winston,* 36 F.3d 548, 559 (7th Cir. 1994); *Delafont v. Beckelman,* 264 F. Supp.2d 650, 656 (N.D. Ill. 2003).

There mere fact that Barsch and Vahl completed (parts of) the arrest report, does not create a Fourth Amendment violation. As explained by Chief Judge James F. Holderman, the act of filling out complaints and arrest reports are ministerial. *O'Neill v. O'Callaghan,* 2002 WL 31133188 at *6 (N.D. Ill 2002). An officer who fills out the complaints after the plaintiffs were in custody and "seized" within the meaning of the Fourth Amendment has not participated in a false arrest. *Id.* "[O]nce [plaintiff] was arrested, the constitutional violation she alleges had already taken place." *Id. (citing Jenkins v. Keating,* 147 F.3d 577, 583-84 (7th Cir. 1998)

4

(rejecting a claim that signing a complaint constitutes effectuating a constitutional violation)). Barsch and Vahl "would have had to have undertaken some action prior to, or at the time of, the plaintiffs' arrests to have "participated" in them." *Id.* Furthermore, to the extent that the arrest reports were improperly completed or not in compliance with ordinary police department procedure, their conduct does not amount to a constitutional violation. *Thompson v. City of Chicago*, 472 F.3d 444, 455 (7th Cir. 2006) (holding that violations of state statutes, local ordinances, or administrative or department regulations do not give rise to an action under section 1983).

Besides having no personal involvement in Ms. Jackson's arrest, Barsch and Vahl had no involvement in the Plaintiff's coercive questioning or the ultimate use of the confession at trial. In the end, Barsch and Vahl, besides transporting the Plaintiff to the Area One, had no physical contact with the Plaintiff and cannot be held liable for the alleged actions of others. Barsch and Vahl relied on information given to them by Detective McCormack and are entitled to rely on that information in transporting the Plaintiff to Area One.

To the extent that the Plaintiff claims Barsch and Vahl are co-conspirators with other Defendants – such a claim does not exist in this case. The only conspiracy claim presented at trial was explained by Judge Filip and specifically excludes Barsch and Vahl.

Therefore, Barsch and Vahl are should be dismissed from this suit as a matter of law.

**II.   DEFENDANT KELLY BROGAN IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ALL OF PLAINTIFF'S CLAIMS.**

As with Barsch and Vahl, Brogan never questioned the Plaintiff, nor detained her at any time. As such, the Plaintiff presented no evidence that she committed any sort of constitutional or state law violation. Moreover, Brogan was also granted summary judgment on the one and only conspiracy claim alleged in this case. Ms. Brogan is the putative victim who contends

Plaintiff attempted to grab her star and gun and then was placed in a "full nelson."

As discussed about, "Personal involvement is a prerequisite for individual liability in a §1983 action." *Gossmeyer v. McDonald,* 128 F.3d 481, 495 (7th Cir. 1997) (*citing Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir. 1983)). An individual cannot be liable in a §1983 action unless he caused or participated in an alleged constitutional deprivation. *Wolf-Lillie,* 699 F.2d at 869. To determine if an officer was personally involved, one should examine the gravamen of the action, such as freedom from unreasonable seizure by arresting her without probable cause. *Jenkins v. Keating,* 147 F.3d 577, 583 (7th Cir. 1998) (holding that defendant could not be liable for a §1983 violation because he did not arrest the plaintiff.).

In this case, it is undisputed that Kelly Brogan did not arrest the Plaintiff or make the decision to arrest the Plaintiff. Further, she did not make a determination of whether there was probable cause to arrest the Plaintiff. In fact, she did not even have the authority at that point in time to make any of those determinations. Officer Brogan was merely the victim on the scene. She was interviewed by police officers who were going to make those aforementioned determinations. Brogan played no role in the arrest or detainment of the Plaintiff. She merely cooperated when being asked questions by those officers who had the authority to make such determinations. It is clear that Kelly Brogan was not personally involved in any deprivation of the Plaintiff's rights. As a result, she cannot be held liable for any of the alleged constitutional deprivations under §1983 or any related state law claims.

### III. ALL DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF COERCED CONFESSION CLAIMS

**1. Coercive Questioning**

At summary judgment, Judge Filip held that Plaintiff could proceed to trial on a substantive due process claim based on her allegation that "[D]efendants compelled her confession through a lengthy and coercive interrogation and detention." (Summ. J. Op. 4). This

contention was based on her representation that she was, in fact, alleging Defendants coerced her confession through some lengthy interrogation. However, at trial, Plaintiff contends that she never confessed. Plaintiff maintains that Assistant State's Attorney John Brassil fabricated her confession in this case. Plaintiff explained to the jury that she told Mr. Brassil that she rescued Defendant Brogan from a burning car and that Mr. Brassil simply ignored what she said and wrote out a confession. Plaintiff presented no evidence that Defendants participated in obtaining her confession. The only fact that was presented at trial relevant to this inquiry was that Defendant McCormack was present at the time of the fabricated confession. At one point she claims that McCormack said in response to her request for a lawyer that "if you are going to get one of those PDs we'll chew him up and spit him out." McCormack's alleged comment is a non-issue because Plaintiff ultimately denies confessing and rather alleges her statement was fabricated.

Judge Filip credited her allegations of coercive questions at summary judgment since she alleged being "taunted, threatened, insulted on the basis of her race and sex, and denied sufficient food and water (a contention she has withdrawn at trial), as well as access to her asthma inhaler…denied bathroom access and forced to urinate on herself." At trial, however, none of this mattered as to her confession. Plaintiff does not attribute any of these actions to her confession, since according to Plaintiff she never confessed.

Plaintiff claims Mr. Brassil fabricated her confession. Plaintiff has not brought any claims against Mr. Brassil and Defendants should not have to defend a claim that is clearly asserted against Mr. Brassil. In addition to the fact that Plaintiff no longer alleges her confession was coerced, Plaintiff has not brought a claim, pursuant to *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477-478 (7th Cir. 1997), that Defendants failed to intervene in Mr.

7

Brassil's alleged fabrication. Therefore, Defendants cannot be held liable for coercing a confession, where plaintiff denies she confessed and claims that a non-party, in fact, fabricated the confession.

### 2. Use of a Coerced Confession

First, as Plaintiff has failed to put forth evidence that Defendants coerced her confession, she cannot claim that Defendants should be held liable for the use of her confession at trial. Moreover, Plaintiff presented no evidence at trial that the confession was ever introduced at trial. Plaintiff, in either her case or Defendants' case, never had one witness testify that Plaintiff's confession was introduced at trial. Under *Sornberger v. City of Knoxville, Illinois,* 434 F.3d 1006, 1026-27 (7th Cir. 2006), a civil claim that plaintiff's right against self incrimination was violated, requires the basic fact – that plaintiff's statement was <u>used</u> at trial. Plaintiff asked witnesses about who testified at trial, but failed to present any evidence that Plaintiff's confession (fabricated or not) was used against her at trial. Therefore, this claim also fails as a matter of law.

### IV. DEFENDANTS MCCORMACK AND O'DONNELL ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE §1985 CONSPIRACY.

Defendants McCormack and O'Donnell are entitled to judgment as a matter of law because Plaintiff has not adduced any evidence of a civil conspiracy under §1985. "To establish a claim for civil conspiracy under §1985, a plaintiff must demonstrate (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of a conspiracy, and (4) an injury to the person or property or a deprivation or privilege granted to U.S. citizens." *Green v. Benden,* 281 F.3d 661, 665 (7th Cir. 2002) (*citing Hernandez v. Joliet Police Dep't,* 197 F.3d 256, 263 (7th Cir. 1999)). The existence of a conspiracy means that people actually agreed to injure him or her. *Alexander v.*

*City of South Bend,* 433 F.3d 550, 556-57 (7th Cir. 2006). A plaintiff must also show that there was racial animus driving the conspiracy. *Id.* (pleading concerted action alone might not always state a claim for a civil conspiracy); *Hardeway v. City of Chicago,* 1991 WL 203857 at *3 (N.D. Ill. 1991) (*citing Plambeck v. Stone,* 662 F.Supp. 298, 301 (N.D. Ill. 1986)).

For example, in *Alexander,* 433 F.3d at 557, the police stopped the plaintiff because he was a black male, but it was not because of racial animus. Instead, they stopped him because he fit the general description of the suspect they were looking for. Evidence of phone calls made between officers is also insufficient to constitute an agreement. *See Goetzke v. Ferro Corp.,* 280 F.3d 766, 778 (7th Cir. 2002) (holding that evidence of phone calls standing alone is indicative only of the fact that the individuals kept in touch). Without racial animus or evidence of an agreement, the Seventh Circuit held that there could not be a §1985 conspiracy. *Id.*

In *Blanton v. City of Indianapolis, Ind.,* 830 F.Supp. 1198, 1200-01 (S.D. Ind. 1993), police officers arrested plaintiff but did not find a valid conspiracy claim under §1985. The court held that the plaintiff did not prove a racial animus to violate her civil rights. *Id.* at 1203-04. There was no racial animus even though she was detained and not allowed to use the restroom, urinated on herself, and was subjected to harassment including being called "an ignorant bitch," being told to "shut your G-d damn mouth," and having her breast touched by the officers. *Id.* at 1200.

Conversely, in *Hardeway v. City of Chicago,* 1991 WL 203857 at *3 (N.D. Ill. 1991), the plaintiff had plead enough to at least get the civil conspiracy claim to survive dismissal. Chief Judge James F. Holderman explained that the civil conspiracy claim could exist because there was a sequence of overt concerted acts including physical and verbal abuse, ransacking of the property, covering up of illegal activity, filing of false criminal charges, and giving false

9

testimony at the plaintiff's trials. *Id.* at *3. When a series of collective acts take place over a substantial period of time it "more readily gives reason to infer that the officers acted according to agreement or plan, as such planning would be necessary to keep the campaign of harassment continuing." *Id.*

In this case, Plaintiff has failed to provide evidence of a civil conspiracy. First, Plaintiff was arrested based on Mr. Clifton's statements to Defendant McCormack. Second, Plaintiff has presented no evidence that Plaintiff was arrested, detained or prosecuted because she was African-American. There has been no evidence that there were people on the scene of a different race and Plaintiff was specifically arrested because she was African-American. Plaintiff simply cannot substantiate that Plaintiff's rights were violated because of her race. Even if the jury believed that statements Plaintiff contends were said by one of the Defendants, only one statement mentions race, "black bitch." Moreover, Plaintiff must still overcome the hurdle that there was a conspiracy based on race. The statement alone does not establish that.

The absurdity of this claim is apparent when comparing the actions of the Defendants with the case illustrations in *Alexander, Blanton, and Hardeway.* Similar to *Alexander,* Plaintiff has not presented any evidence of racial animus. Plaintiff merely relies on the comments made; however, there has to be a racially motivated reason to violate her civil rights. Plaintiff has not provided any evidence besides one comment, which was made by one Defendant, that was remotely racially based. Plaintiff has also provided no evidence of a plan or agreement to violate her civil rights. In *Alexander,* even phone calls between defendants did not amount to an agreement. Using that precedent, it is clear that in this case a comment made in an interview room does not rise to the level of an agreement. Further, as seen in *Blanton,* mere comments are insufficient to support a claim under §1985 conspiracy. Most telling, though, is comparing this

case with the officers' actions in *Hardeway*. Here, the lone allegation stems from one comment. This case is far from "a series of collective acts" over "a substantial period of time." *See Hardeway,* 1991 WL 203857 at *3. Standing alone, Defendant McCormack's comment(s) in the interview room cannot serve to amount to a civil conspiracy under §1985. As such, Defendants should receive judgment as a matter of law in their favor on this claim.

## V. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S FALSE ARREST CLAIM.

Under the doctrine of qualified immunity, public officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). The issue of qualified immunity is a question of law for the court to decide. *Alvarado v. Picur*, 859 F.2d 448, 450 (7th Cir. 1988). The analysis is two-fold. First, the court determines whether the alleged conduct sets out a constitutional violation. If no constitutional right was violated, then no further inquiry is necessary. If, however, a violation could be made out based on the parties' submissions, the court asks whether the constitutional standards were clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). With respect to the second prong of the test, the court evaluates whether the law was clear in relation to the specific facts confronting the officer at the time he acted. *Id.*; *see also, Lanigan,* 110 F.3d at 472. Although qualified immunity is a defense to a §1983 suit, plaintiff bears the burden of establishing the elements of this two-part test. *Spiegel*, 196 F.3d at 723.

The police are held to standards of reasonableness, not to standards of perfection. *Tangwall v. Stuckey,* 135 F.3d 510, 521 (7th Cir. 1998). "A society that expects police officers to provide protection must afford them in turn some protection from lawsuits." *Id.* As such, qualified immunity leaves ample room for mistaken judgment by police officers. *Malley v. Briggs,* 475 U.S. 335, 343, 106 S. Ct. 1092 (1986). Further, a police officer is entitled to rely

11

upon information provided to him by another police officer. *O'Leary v. Luongo,* 692 F.Supp. 893, 902 (N.D. Ill. 1988). The burden is on the plaintiff to show why the defense fails. *Estate of Stevens v. City of Green Bay,* 105 F.3d 1169, 1174 (7th Cir. 1997).

In this case, Defendant McCormack was confronted with a situation he could simply not ignore. Eric Clifton, an on-scene witness, informed Defendant McCormack that he observed Plaintiff holding Kelly Brogan in what he termed a "full nelson." Eric Clifton contends that the hold was "odd." He further told McCormack that he went over and motioned Plaintiff to "ease-up" on Brogan. Plaintiff herself confirms these facts. Plaintiff has confirmed that she held Brogan in the "full nelson" (although she does not term it accordingly). Plaintiff demonstrated the hold before the jury. Plaintiff also testified that the photograph of her performing the hold on Assistant State's Attorney John Brassil also depicts the hold she did on Brogan. Moreover, Plaintiff confirms that Eric Clifton came up and grabbed her arm and told her to "ease-up."

Although, Eric Clifton now claims that he told Defendant McCormack that he thought Plaintiff was helping Brogan, he still maintains that he told McCormack that he saw Plaintiff holding Brogan in a "full nelson" and that he went over and motioned to Plaintiff to "ease-up." In fact, simply because Clifton said he thought Plaintiff was helping, does not change McCormack's reasonable basis to arrest Plaintiff.

Here, McCormack was confronted with a situation where an eye-witness informed him that Plaintiff was holding Brogan in a "full nelson." What was McCormack to do? According to Webster's Dictionary, a "full nelson" is "a wrestling hold gained from behind an opponent by thrusting the arms under the opponent's arms and clasping the hands behind the opponent's head." Merriam-Webster Online Dictionary (2008), *available at* http://www.merriam-webster.com. The known meaning of a "full nelson," no matter how Eric Clifton meant it, is an

aggressive wrestling hold. McCormack has testified this was his understanding of a "full nelson." Plaintiff, herself, does not dispute the hold; she merely says she was helping. Plaintiff demonstrated the hold, at least twice, at Area One.

It would be unreasonable to expect an officer to ignore Eric Clifton's statement that it was a "full nelson" and not arrest Plaintiff based on this observation, even if Mr. Clifton told McCormack that he thought she was helping.

This situation is analogous to where a witness reports to DCFS that he saw a parent holding a child upside down, hitting his head on the floor. When the DCFS worker talks to a witness and he says, "I thought he was merely trying to get water out of the child's ear." Is the DCFS employee going to ignore that witness, simply because he thinks there might be some "reason" the parent was banging the child's head upside down? Anyone would agree that the DCFS would be derelict in its responsibilities if it did not take action.

Similarly, McCormack had someone who observed Plaintiff place Brogan in a "full nelson" and Plaintiff admits this fact. In addition, Kelly Brogan reports the same "full nelson" when she speaks to Detective Evans. No one disputes the "full nelson;" the characterization of help, reported or not to the police, does not change the description of the hold to McCormack, who arrests Plaintiff based on this statement.

Defendants have found no case that supports ignoring such facts and not arresting the person putting the police officer in a "full nelson." Plaintiff would rather propose that McCormack should have ignored this "full nelson" and just moved on with the investigation.

As such, if Defendants are granted qualified immunity based on what Mr. Clifton told McCormack, the fact the Plaintiff was later charged with other crimes does not negate the

probable cause Defendants had at the time of Plaintiff's arrest. *Devenpeck v. Alford,* 543 U.S. 146, 153-54, 125 S.Ct 588 (2004).

VI. **PROBABLE CAUSE BARS LIABILITY FOR ALL OTHER CLAIMS.**

It follows, that if Defendants had probable cause to arrest Plaintiff, her malicious prosecution and IIED claims fail as a matter of law. *Gray v. Burke,* 466 F.Supp.2d 991, 1000 (N.D.Ill., 2006).

**WHEREFORE,** the Defendant Officers, respectfully request that this Court grant their Rule 50 motion for judgment as a matter of law.

        Respectfully submitted,

        s/ Avi T. Kamionski
        Avi T. Kamionski

Andrew M. Hale
Avi T. Kamionski
Andrew M. Hale & Associates
53 West Jackson
Suite 1757
Chicago, Illinois 60604
312-341-9646
312-341-9656 (fax)