IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RACHELLE JACKSON,             )
                                )    No. 03 C 8289
        Plaintiff,        )
                                )    Judge Castillo
      v.                       )
CITY OF CHICAGO, *et al,*     )
                                )
        Defendants.     )

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants Patrick McCormack, Michael O'Donnell and Kelly Brogan, by one their attorneys, move this Court pursuant to Rule 50(b) For Judgment as a Matter of Law and for a new trial pursuant to Rule 51 and 59 state as follows:

### INTRODUCTION

On November 19, 2002, Rachelle Jackson was in her apartment drinking shots of whiskey. (Trial Transcript at pgs. 276:13-25; 277:1-9 attached hereto as Exhibit A). Ms. Jackson drank about a half pint of whiskey and then left her apartment to go to the Root Inn, a neighborhood lounge and liquor store, to purchase more alcohol. (Tr. at pgs. 277:10-12; 278:7-12; 281:19-22). On her way to the Root Inn, a man approached Ms. Jackson and asked her if he could walk with her. (Tr. at pgs. 285:23-25; 286:1-2). This man was wearing a tan suit. (Tr. at pg. 286:3-5). Ms. Jackson proceeded to walk "a little in front of" the man in the tan suit. (Tr. at pg. 286:24-25).

### At The Scene Of The Accident

Ms. Jackson proceeded to walk down Princeton avenue, on the west side of the street. Ms. Jackson had just crossed 43rd Street when the accident occurred. (Tr. at pg. 292:1-8). Ms.

Jackson was the first person at the accident scene. (Tr. at pg. 295:8-9). When she heard the crash, the man in the tan suit was right behind Ms. Jackson. (Tr. at pg. 295:10-12). Ms. Jackson heard someone say "get her." (Tr. at pg. 300:2-3). Ms. Jackson approached the passenger side of the police car and saw that the passenger door was open. (Tr. at pg. 300:14-16). Ms. Jackson claims that she reached in the car and scooped up Officer Brogan and got her out of the car. (Tr. at pg. Tr. at pg. 301:22-25). According to Ms. Jackson, Officer Brogan was unresponsive and wobbly. (Tr. at pg. 304:14-16). Ms. Jackson attempted to stand Officer Brogan up, rather than put her on the ground. (Tr. at pg. 304:9-19). Ms. Jackson was holding Officer Brogan under the arms with her hands on the back of Officer Brogan's neck. (Tr. at pg. 305:6-8, 22-24). Ms. Jackson's fingers were together. (Tr. at pg. 305:9-10).

### Eric Clifton Acts to Stop Rachelle Jackson

When Ms. Jackson was holding Officer Brogan in this manner, Eric Clifton, who lived on the northeast corner of Princeton and 43rd Street, came over to Ms. Jackson, touched her on the arm and told her to "ease up" or "let go." (Tr. at pgs. 304:23-25; 305:1-2; 1051:7-12). Ms. Jackson also remembers a man telling her to "lighten up" or "let go." (Tr. at pg. 340:24). At that point, Ms. Jackson let go of Officer Brogan. (Tr. at pg. 305:4-5).

Mr. Clifton saw that Ms. Jackson had Officer Brogan in a "full nelson." (Tr. at pg. 1038:25; 1039:1). Mr. Clifton described a "full nelson" as "when one individual stands behind another and they have their arms interlocked behind their neck, and the other person that's in front, their arms are up." (Tr. at pg. 1039:2-6). Mr. Clifton felt that the position that Ms. Jackson was in with Officer Brogan was restraining, something he recognizes as a "wrestling technique." (Tr. at pg. 1049:19-21). What Mr. Clifton observed Ms. Jackson doing to Officer Brogan looked "odd" to him and surprised him. (Tr. at pg. 1052:18-22). Mr. Clifton wondered why Ms. Jackson

was holding Officer Brogan in this manner. (Tr. at pg. 1055:21-24). Based on what he saw with Ms. Jackson holding Officer Brogan in a full nelson, Mr. Clifton walked over and confronted Ms. Jackson. (Tr. at pgs. 1052:9-12, 23-25; 1053:1).

### Eric Clifton talks to Defendant McCormack

After the incident, Mr. Clifton spoke to a plain-clothed police officer. (Tr. at pgs. 1042:17-19; 1043:3-4). Mr. Clifton wanted to tell the police what he saw. (Tr. at pgs. 1055:25; 1056:1-2). A detective came to talk to Mr. Clifton because Mr. Clifton wanted to talk to the police. (1056:3-5). Mr. Clifton spoke to this detective in his house. (Tr. at pg. 1056:6-15). Mr. Clifton told the detective that he saw Ms. Jackson holding officer Brogan in a "full nelson." (Tr. at pgs. 1051:15-20; 1056:22-24). Mr. Clifton used the word "full nelson" when describing what he saw. (Tr. at pgs. 1051:22-23; 1056:25; 1057:1). Mr. Clifton also told the officer that a "full nelson" was a wrestling hold. (Tr. at pgs. 1051:24-25; 1052:1). In a "full nelson" hold, the person's hands are on the neck of the other person. (Tr. at pg. 1052:2-4). That is what Mr. Clifton saw Ms. Jackson doing to Officer Brogan. (Tr. at pg. 1052:5-6). Mr. Clifton also told the detective that what he saw Ms. Jackson doing to Officer Brogan was "odd." (Tr. at pg. 1057:8-9). When Mr. Clifton told the detective about the "full nelson" and it being odd, he did not tell the detective that he thought Ms. Jackson was helping Officer Brogan. (Tr. at pg. 1057:10-17).

### Eric Clifton Gives A Statement To ASA Brassil

On November 20, 2002, the day after the accident, Mr. Clifton made a statement to an Assistant State's Attorney. (Tr. at pg. 1044:5-7; 1057:22-24). That night, Mr. Clifton signed a statement. (Tr. at pg. 1044:24-25). Defendants' trial exhibit 15 is the statement that Mr. Clifton signed. (Tr. at pg. 1046:23-25; 1047:1-5). (Clifton Statement attached hereto as Exhibit B). Mr. Clifton read the whole statement. (Tr. at pg. 1045:3-4). Mr. Clifton was asked "were those your

words in the statement" to which Mr. Clifton responded: "In the statement, I did say it, say what I read in the statement, maybe not so much in my words, not to get it confusing, but I made the statement and I signed it." (Tr. at pg. 1045:5-8). The State's Attorney put down everything that Mr. Clifton said in the statement. (Tr. at pg. 1046:7-8). The State's Attorney was "writing down word for word." (Tr. at pg. 1046:10-12). Mr. Clifton carefully read the statement and then signed it. (Tr. at pgs. 1048:25; 1049:1-3). Mr. Clifton also demonstrated for the State's Attorney the manner in which Ms. Jackson was holding Officer Brogan. Defendants' trial exhibits 10 and 11 accurately depict what he saw Ms. Jackson doing to Officer Brogan. (Tr. at pg. 1055:3-17). (Clifton Photo attached hereto as Exhibit C).

Ms. Jackson never spoke to any paramedics on the scene. (Tr. at pg. 312:9-11). Ms. Jackson never saw how Officer Brogan got from the stoop of Mr. Clifton's house to the ambulance. (Tr. at pg. 312:12-14).

The first officer that Ms. Jackson spoke with at the scene was Officer Barsch. (Tr. at pg. 312:19-23). Ms. Jackson cannot recall what she said to Officer Barsch. (Tr. at pg. 313:8-9). At some point on the scene, Ms. Jackson was placed in the back of a police car. (Tr. at pg. 313:10-12). At some point while Ms. Jackson was in the back of that police car, the police brought another car by and asked her to look at the man who was in the other police car. (Tr. at pg. 313:19-22). Ms. Jackson identified the man in the police car as being the man in the tan suit who she saw by the driver's side of the police car that had gotten in the accident. (Tr. at pg. 314:1-2, 10-14). Sometime thereafter, Ms. Jackson was taken to the police station. (Tr. at pg. 315:21-24). Ms. Jackson cannot recall who drove her to the police station. (Tr. at pg. 316:23-24).

Ms. Jackson claims she did not know the amount of her bail.  (Tr. at pg. 326:10-11). She left that up to her family. (Tr. at pg. 326:12-13).  Her sister told her something about her bail but she can't remember what she was told. (Tr. at pg. 326:17-23).

At some point while being held at the police station, Ms. Jackson spoke to an Assistant State's Attorney named John Brassil. (Tr. at pg. 328:17-25; 329:1-7).  ASA Brassil took a handwritten statement from Ms. Jackson, who signed each page of the handwritten statement. (Tr. at pg. 330:6-25; 331:1-3).  Ms. Jackson recalls ASA Brassil advising her of her constitutional rights. (Tr. at pg. 331:12-14).  Ms. Jackson told ASA Brassil that she grabbed Officer Brogan under the arms and put her hands behind Officer Brogan's neck.  (Tr. at pg. 338:22-25).  Ms. Jackson demonstrated the way she was holding Officer Brogan for ASA Brassil, as shown in defendants' trial exhibit 2. (Tr. at pg. 339:1-19).  Defendants' trial exhibit 3 also shows the way Ms. Jackson held Officer Brogan. (Tr. at pg. 339:22-25; 340:1). (Jackson photo attached hereto as Exhibit D).  Ms. Jackson told ASA Brassil that a man told her to "let go" and grabbed her arm. (Tr. at pg. 341:4-11). ASA Brassil never threatened Ms. Jackson when he was taking the handwritten statement from her. (Tr. at pg. 359:25; 360:1-2).

**ARGUMENT**

**I.**     **Defendant McCormack Had Probable Cause To Arrest The Plaintiff.**

**A.**     **Probable Cause to Arrest Existed Based On Eric Clifton's Statements And Actions.**

Eric Clifton's actions and statements to defendant McCormack establish probable cause for plaintiff's arrest.  "Probable cause is an absolute defense to a claim of wrongful arrest asserted under section 1983 against police officers." *Chelios v. Heavener,* 520 F.3d 678, 685 (7th Cir. 2008).   "Police ordinarily have probable cause if, at the time of the arrest, the 'facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one

of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' " *Purtell v. Mason,* 527 F.3d 615, 2008 WL 2038893 *9 (7th Cir. May 14, 2008) (citations omitted). In determining whether an officer had probable cause, the court steps into the shoes of a reasonable person in the position of the officer. Chelios, 520 F.3d at 685 *citing Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir.2006) (noting that we "evaluate[ ] probable cause 'not on the facts as an omniscient observer would perceive them,' but rather 'as they would have appeared to a reasonable person in the position of the arresting officer' " quoting *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir.1998)).

The Seventh Circuit has consistently held that a police officer has probable cause to arrest when he has received information from a single eyewitness or putative victim of a crime who it seems reasonable to believe is telling the truth. *Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 680 (7th Cir. 2007)*; Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000); *Spiegel v. Cortese*, 196 F.3d 717, 724 (7th Cir. 1999); *Grimm v. Churchill*, 932 F.2d 674, 675 (7th Cir. 1991); *Gerald M. v. Conneely*, 858 F.2d 378, 381 (7th Cir. 1988); *Gramenos v. Jewel Cos.*, 797 F.2d 432, 439 (7th Cir. 1986), *cert. denied*, 481 U.S. 1028 (1987). Furthermore, when probable cause has been established from the report of a reasonably credible eyewitness or victim, there is no constitutional duty to investigate further. *Woods*, 234 F.3d at 997; *Spiegel*, 196 F.3d at 725.

Based on Eric Clifton's statements on scene, detective McCormack had probable cause to arrest plaintiff on scene. Under established Seventh Circuit precedent, "[t]he existence of probable cause turns on the information known to the officers at the moment the arrest is made, not on subsequently-received information." *Spiegel* 196 F.3d at 723 *citing Hebron v. Touhy*, 18 F.3d 421, 423 (7th Cir.1994). Mr. Clifton told detective McCormack that he saw Ms. Jackson holding officer Brogan in a "full nelson." (1051:15-20; 1056:22-24). Mr. Clifton also told the detective McCormack that a "full nelson" was a "wrestling hold." (1051:24-25; 1052:1). In a

"full nelson" hold, the person's hands are on the neck of the other person. (1052:2-4). The dictionary agrees. According to Webster's Dictionary, a full nelson is "a wrestling hold gained from behind an opponent by thrusting the arms under the opponent's arms and clasping the hands behind the opponent's head." Merriam-Webster Online Dictionary. 2008.

Mr. Clifton also told detective McCormack that what he saw Ms. Jackson doing to Officer Brogan was "odd." (1057:8-9). When Mr. Clifton told detective McCormack about the full nelson and it being odd, he did not tell McCormack that he thought Ms. Jackson was helping Officer Brogan. (1057:10-17).

Despite stating that he saw Ms. Jackson holding Brogan in a "full nelson" and that this seemed odd, Eric Clifton also claims that he thought plaintiff was helping Brogan. Mr. Clifton's speculation that Ms. Jackson was helping is doubtful, at best, and inconsistent with what he observed and the manner in which he reacted to what he observed. Someone who performs a full nelson wrestling hold on a police officer is not helping them. This fact gets bolstered when Clifton states that he confronted plaintiff and the plaintiff, herself, admits that Clifton told her to "ease up." (Tr. (304:23-25; 305:1-2). If plaintiff was actually helping Brogan, there would be no reason for Clifton to confront Jackson, grab her arm, and tell her to ease up. (Id.) Ms. Jackson admits she let go of Brogan after Clifton told her to "ease up." This further confirms that Ms. Jackson had no reason to hold Brogan in this manner.

Nevertheless, even with these apparent inconsistencies, McCormack had probable cause to arrest plaintiff. Police officers are not required to resolve such inconsistencies before arresting an individual. *Spiegel* 196 F.3d at 724-25.

The Seventh Circuit explained:

> [T]he law does not require that a police officer conduct an incredibly
> detailed investigation at the probable cause stage." *Gerald M. v. Conneely*,

858 F.2d 378, 381 (7th Cir.1988). Accordingly, "[t]he inquiry is whether an officer has reasonable grounds on which to act, not whether it was reasonable to conduct further investigation." *Kelley,* 149 F.3d at 647. "Nothing suggests that a victim's report must be unfailingly consistent to provide probable cause." "The credibility of a putative victim or witness is a question, not for police officers in the discharge of their considerable duties, but for the jury in a criminal trial. Cf. *Hebron*, 18 F.3d at 423 (noting that police "are entitled to act on the basis of observable events and let courts resolve conflicts about mental states"). We refuse to require law enforcement officers to delay arresting a suspect until after they have conclusively resolved each and every inconsistency or contradiction in a victim's account.

*Id.* (reversing district court's entered judgment on issue of probable cause to arrest).

Likewise, in *Gramenos,* the court credited a single eyewitnesses' account to the police to substantiate probable cause. The court explained:

In Illinois the report of an eyewitness to a crime is sufficient to authorize an arrest. The Supreme Court has not spoken on the question, but the formula for probable cause, such as "a probability or substantial chance of criminal activity, not an actual showing of such activity" or "facts and circumstances known to the officer [that] warrant a prudent man in believing that an offense has been committed" do not suggest that an officer risks his career and his fortune by believing an apparently sober eyewitness to a crime. A "prudent" officer may balk if the person claiming to be an eyewitness strolls into the police station and describes a crime from long ago, or if the person leveling the accusation is babbling or inconsistent. When an officer has "received his information from some person-normally the putative victim or an eye witness-who it seems reasonable to believe is telling the truth" he has probable cause.

797 F.2d at 437 (internal citations omitted).

The Seventh Circuit stressed:

Probable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth, that matters. For example, *McKinney v. George,* 726 F.2d 1183 (7th Cir.1984), held that a witness's complaint established probable cause as a matter of law, making a trial unnecessary. As the Eighth Circuit remarked in finding probable cause despite an officer's failure to conduct an investigation (even to look at the bill said to be counterfeit): "There is no constitutional or statutory requirement that before an arrest can be made the police must conduct a trial." *Morrison v. United States,* 491 F.2d 344, 346 (8th

Cir.1974). "A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does." *Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967).

*Id.*

In addition to Clifton reporting to McCormack that he saw the "full nelson," plaintiff, herself, admits she had the officer in a "full nelson." (Tr. at pg. 305). Plaintiff demonstrated the "full nelson" on ASA Brassil. Plaintiff claims she was helping and Clifton has mentioned, at one point, he thought plaintiff was helping. But, plaintiff and/or Clifton's claim of helping do not change the probable cause analysis. The Seventh Circuit's analysis in *Hebron* is instructive on this point. *Hebron* involved a landlord-tenant dispute. The tenants complained that the landlord had "cut off their water and were refusing to permit them to use or remove their washer-dryer in the basement." *Hebron,* 18 F.3d at 422. The tenants complained to the police and police arrested the landlord as the dispute escalated. *Id.* The landlord denied that she had any criminal intent to keep the tenants away from the basement and, therefore, the police did not have probable cause to arrest her for depriving the tenants' access to the basement. *Id.* The landlord's intent argument was rejected. The Seventh Circuit explained:

> What is more, throughout this litigation Hebron has conceded that she denied the tenants access to their property. An affidavit filed in January 1988 states: "I did not let the [tenants] into the basement because I did not know their intentions after they knew they were being evicted but if they had wanted to move thier [sic] washer and dryer I would have gladly let them do so. I only wanted to protect my property which was also located in the basement." In other words, Hebron admitted to the act the tenants alleged (denying them access to their machine) but denied that she had a criminal intent to keep their property permanently. Police have a hard time evaluating competing claims about motive; they are entitled to act on the basis of observable events and let courts resolve conflicts about mental states.

I*d.* at 423.

Here, plaintiff admits to the "full nelson." Eric Clifton told McCormack about the "full nelson." Clifton also told detective McCormack that what he saw was "odd" and that he confronted Ms. Jackson when he observed what she was doing to Brogan. Helping or hurting is a mental state – which was left to criminal court to resolve. As explained, McCormack was entitled to rely on the information he had at the time to arrest plaintiff. At that point, "the law does not require that a police officer conduct an incredibly detailed investigation at the probable cause stage" *Hudson v. City of Chicago*, 242 F.R.D. 496 (N.D.Ill. 2007) (Castillo, J) *quoting Spiegel,* 196 F.3d at 724-25. Police "have no constitutional duty to keep investigating a crime once they have established probable cause." *Kompare v. Stein*, 801 F.2d 883, 890 (7th Cir.1986); *Schertz v. Waupaca County*, 875 F.2d 578, 583 (7th Cir.1989) ("once police officers have discovered sufficient facts to establish probable cause, they have no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence"); *Askew v. Chicago*, 440 F.3d 894, 896 (7th Cir.2006) ("The Constitution permits [police] to initiate the criminal process and leave the sifting of competing claims and inferences to detectives, prosecutors, judges, and juries in the criminal prosecution"). Therefore, regardless of what and who comes later does not negate the fact that detective McCormack had probable cause at the time of plaintiff's arrest. McCormack, based on Clifton, and plaintiff's own admission, had probable cause to arrest plaintiff for unlawfully restraining Brogan.

**B.** **Probable Cause For Any Crime Bars a False Arrest Claim.**

**1.** **Probable Cause Also Existed To Arrest Plaintiff For Battery.**

Plaintiff admission that she placed Brogan in a "full nelson" (or touched her in any way for that matter) constituted a battery. In Illinois, a battery occurs when a person "intentionally or knowingly without legal justification" causes bodily harm to another or touches him in an

"insulting or provoking" manner. *Cefalu v. Village of Elk Grove,* 211 F.3d 416, 425 (7th Cir. 2000) *citing* 720 ILCS 5/12-3(a).  As such, McCormack had probable cause to arrest plaintiff for a simple battery.  This is not a novel concept – it is grounded in Supreme Court precedent.

As long as probable cause to arrest existed for <u>any</u> violation of law, even one that is not closely related to the arrest for which plaintiff was charged, there can be no constitutional violation. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  In *Devenpeck*, the Supreme Court reiterated that an arrest "is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."  543 U.S. 146, 152 (2004).  The Court opined this principle applies even when the "arrest is not 'closely related' to the offense stated by the arresting officer at the time of arrest." <u>Id</u>. at 153.  The Court explained "than an arresting officer's state of mind is irrelevant to the existence of probable cause" in that the officer's "subjective reason for making the arrest need not be the criminal offense as to which the facts provide probable cause." <u>Id</u>. at 153.  Therefore, plaintiff's arrest would be constitutionally proper, "*even if* that offense was not the reason offered at the time of arrest." *Taylor v. Bush*, 2006 WL 862855 *4 (N.D.Ill. March 30, 2006), *citing Devenpeck*, 543 U.S. at 148-153.

Even if plaintiff would like to categorize her battery as a minor offense, probable cause would still exist for a full custodial arrest. *Atwater v. City of Lago Vista*, 532 U.S 318, 324 (2001)(police can make a full custodial arrest for minor violations). Plaintiff Atwater sued the arresting officer and the City of Lago Vista under 42 U.S.C. § 1983 for violating her Fourth Amendment rights by making a custodial arrest for Atwater's failure to wear a seatbelt, failure to secure her children in seatbelts, driving without a license and failing to provide proof of insurance. *Atwater*, 532 U.S at 324.  Atwater argued that she should have been given a citation or ticket and not be subject to the humiliation of a full custodial arrest, handcuffed, searched at the jail and photographed. *Id.* The Supreme Court ruled that if there was probable cause to

believe that an individual has committed "even a very minor criminal offense" then an arrest of that individual, even a full custodial arrest, did not violate the Fourth Amendment. *Id.* at 354.

Here, not only does plaintiff admit to placing Brogan in a full nelson, Brogan was injured by plaintiff's conduct. Defense presented undisputed testimony at trial that Brogan was injured as a result of plaintiff's conduct. (Tr. 559-560). Brogan underwent surgery for her shoulder as a result of being placed in a full nelson by plaintiff. (*Id.*) Plaintiff's counsel only attempted counter to that, was questioning Brogan about whether the injuries were documented in reports tendered by the City. Simply because an injury is not documented in a report does not mean it did not occur.

### 2. No Need To Establish Probable Cause For Disarming Brogan.

The Seventh Circuit in their Pattern Civil Jury Instructions adopted the well-established Supreme Court precedent set forth in *Devenpeck*. Instruction 7.06 states in part:

> [It is not necessary that Defendant had probable cause to arrest Plaintiff for [*offense in case*], so long as Defendant had probable cause to arrest him for some criminal offense.] [It is not necessary that Defendant had probable cause to arrest Plaintiff for all of the crimes he was charged with, so long as Defendant had probable cause to arrest him for one of those crimes.]

Defendants proposed instruction No. 25 included this language and was rejected by the Court. Here, plaintiff was arrested for performing the "full nelson," as well as attempting to disarm Brogan. The jury could have believed probable cause to arrest existed for the full nelson, based on Eric Clifton's statements to McCormack, while rejecting Brogan's account of grabbing at the star and gun. The Supreme Court and the Pattern Civil Jury Instructions recognized that point.

"The actual existence of *any* probable cause to arrest precludes a § 1983 suit for false arrest." *Gray v. Burke,* 466 F.Supp.2d 991, 998 (N.D.Ill.,2006)(Moran, J). Accordingly, even on

the offense of battery alone, in addition to unlawful restraint, there was probable cause to arrest plaintiff and, as such, defendants are entitled to Judgment on plaintiff's false arrest claims.

### C. Probable Cause To Arrest Voids The Judgment Against Defendants On Plaintiff's Malicious Prosecution And IIED Claims.

Finally, if probable cause existed for plaintiff's arrest, defendants would be entitled to judgment, not withstanding the verdict, on plaintiff's malicious prosecution, and plaintiff's IIED claim. *McDade v. City of Chicago,* 264 F.Supp.2d 730, 734 (N.D.Ill. 2003).

### D. Defendants Are Entitled to Qualified Immunity on Plaintiff's False Arrest Claims.

Defendants incorporate by reference their arguments made in their original Rule 50 motion submitted to the Court during trial

## II. Plaintiff Is Only Entitled To Nominal Damages On Her Length Of Detention Claim.

The United States Supreme Court has clearly held that it is constitutionally permissible to hold an arrestee up to 48-hours prior to his probable cause hearing. *County of Riverside v. McLauglin,* 500 U.S. 44, 56 (1991). Here, the jury found that plaintiff was held longer than 48-hours prior to her probable cause hearing. How much longer? Plaintiff never actually established at trial, but there was testimony at trial that plaintiff was arrested on November 19, 2002 and first appeared before a judge on November 22, 2002. Nevertheless, plaintiff failed to establish that defendants McCormack and O'Donnell caused this constitutional violation and that plaintiff suffered an "actual injury" as a result of <u>this</u> violation.

The jury found that although she was held past the "48-hour" deadline, the conditions in which she was held were reasonable. As such, although there was a technical violation of the 48-hour rule, plaintiff suffered no "actual damages" – separate and distinct from the damages she recovered on her other claims.

### A. Defendants Were Not The Cause Of Plaintiff's Extended Detention.

Assistant States Attorney John Brassil caused plaintiff's extended detention. "Section

1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (1983) (citations omitted and emphasis in original).

ASA Brassil made the decision to charge plaintiff. (Tr. at pg. 593). McCormack and O'Donnell did not, and could not, charge plaintiff. (Id.). Defendants McCormack and O'Donnell sought felony charges against plaintiff by contacting the States Attorney to review the case. Brassil arrived on November 20 and began to interview witnesses. (Tr. 594-595). Brassil interviewed Eric Clifton. (Tr. at 597). Based on Eric Clifton statement, Brassil had sufficient information to charge plaintiff with a crime, but chose to continue his investigation. (Tr. at pg. 601). This was his decision to continue the investigation. (Id.) Later on, Brassil spoke to Kelly Brogan on November 21 at 7:00 p.m. (Tr. at pg. 606). After Kelly Brogan made her statement to Brassil, he still did not charge plaintiff. (Tr. at pg. 609). Although he believed there was probable cause to charge plaintiff, Brassil, alone, decided to continue his investigation and to talk to more witnesses. (Tr. at pg. 610). McCormack and O'Donnell were at the mercy of Brassil's investigation. ASA Brassil was the individual who decided that plaintiff should be held over and Brassil was ultimately the individual who obtained plaintiff's confession.

Plaintiff did not sue ASA Brassil. It is unfair to hold defendants liable for what Brassil did or did not do. In fact, under the Illinois Tort Immunity Act, defendants are not liable for Brassil's actions, even if his action were tortuous. 745 ILCS 10/2-204 (A public employee acting within the scope of his or her employment is not liable for an injury caused by the act or omission of another person). Moreover, Plaintiff has not brought a claim, pursuant to *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477-478 (7th Cir. 1997), that Defendants failed to intervene in Mr. Brassil's alleged fabrication.

**B.** **Plaintiff Did Not Establish She Suffered An "Actual Injury" To Justify Any Compensatory Damages On Her Extended Detention Claim.**

Plaintiff is only entitled to nominal damages for the constitutional violation of being detained for more than 48 hours prior to her probable cause hearing. In Section 1983 cases, to recover more than nominal damages, the plaintiff must provide "proof of actual injury." *Carey v. Piphus*, 435 U.S. 247, 248 (1978). There are two Seventh Circuit cases that set forth the guidance on "actual injury" resulting from a 48 hour violation: *Kyle v. Patterson,* 196 F.3d 695 (7th Cir. 1999)*,* and *Lopez v. City of Chicago*, 464 F.3d 711 (7th Cir. 2006).

Kyle was arrested without probable cause by several Harvey police officers. *Kyle v. Patterson*, 957 F.Supp. 1031, 1032 (N.D.Ill 1997). Kyle was detained for 61 hours before being brought before a judge for his probable cause hearing. *Id.* Although the judge found that there was probable cause to arrest Kyle, he filed a lawsuit alleging that defendants violated his rights by failing to bring him before a judge within 48 hours of his arrest. *Id.* at 1034. Judge Gettleman agreed and entered judgment in plaintiff's favor. *Id.* at 1035. However, he only awarded Kyle nominal damages for the 48-hour violation. *Id.* The court reasoned:

> It is unlikely that Kyle would have been released on bail had he received a timely hearing, and Kyle does not claim that he was released on bail when his hearing was finally held. As far as it appears, Kyle's being charged a day late meant only that he spent that day in the police lockup rather than in Cook County Jail. No doubt the lockup is unpleasant, but so is the jail. A violation of a due process right guaranteed by the Constitution that leaves the plaintiff no worse off entitles him to nominal damages, but only nominal damages.

*Id.*

The Seventh Circuit affirmed this ruling in *Kyle v. Patterson,* 196 F.3d 695 (7th Cir. 1999). Kyle was unable to demonstrate an actual injury. "Probable cause was found, bail was set, and Kyle [never made bail]." *Id.* at 696. Nevertheless, Kyle argued "[t]he extra time in custody, he said, left him 'uncomfortable, frightened, confused, and humiliated (we can only assume that being charged with murder engenders similar feelings) and that significant damages

should be awarded in his favor.'" *Id.* at 697.  This argument was made at the District Court level, denied, and Kyle's nominal damage award was affirmed.  *Id.*

Ms. Jackson, like Kyle, was detained a few hours past the 48-hour mark.  A Judge found there was probable cause to detain Jackson at the probable cause hearing.  Jackson never posted bail and, in fact, remained in custody until her eventual acquittal.  Jackson never presented any evidence how the additional hours, past the 48-hour mark, caused her any "actual damages," separate and distinct from any of her other claims, i.e., the false arrest claim or the coercive questioning claim.  The 48-hour violation in this case was a technical violation.  Jackson was going to be held in custody regardless.

In *Lopez v. City of Chicago*, the Seventh Circuit did allow a plaintiff to proceed with compensatory damages on a 48-hour violation. 464 F.3d 711, 722 (7th Cir. 2006).  Lopez was arrested on a murder charge and held for over four days, shackled to a bench in an interrogation room.  *Id.* at 714.  On the fifth day he was charged and taken a to a police lockup and eventually to court. *Id.*   The next day, Lopez was let go, when someone else confessed to the murder. *Id.*

Lopez brought a 48-hour violation claim, as well as unreasonable conditions of confinement claim.   To support his conditions of confinement claim, Lopez "presented evidence that he was deprived of food, drink, and sleep during the four days and nights he spent shackled to the wall of the interrogation room, and was forced to yell for an extended period of time before being let out to use the bathroom." *Id.* at 720.  For such conditions, the court held that Lopez could recover "actual damages" for the time held in police custody past the 48-hour mark.  In short, Lopez could establish that the "but for" being held more than 48-hours in an interrogation room, he would have been subject to better conditions in jail.  *Id.* at 722.

Unlike Lopez, Jackson was held for a few hours past the 48-hour mark[1], as opposed to over more than 4 days. Moreover, the jury found that Jackson was held under reasonable conditions. The jury entered a verdict in favor of defendants on plaintiff's Fourth Amendment conditions of confinement claim. In addition, plaintiff presented no evidence that being in the police interview room was worse than being held in a lock-up or the County Jail. In fact, plaintiff presented evidence that the County Jail was worse than police custody. For example, plaintiff testified she was bothered by mice and other arrestees while in jail. (Tr. 240-45). In any event, given that the jury found the conditions of her confinement in CPD custody were reasonable, plaintiff has failed to establish what "actual damages" she sustained as a result of not being brought to a judge sooner.

Nominal damages for a 48-hour violation was also entered on June 2, 2008 in *Brady v. Wade* 2008 WL 2323791, *4 (N.D.Ill. 2008)(Cole, MJ). Plaintiff was held for 78 hours before he was brought before a Judge. Judge Cole explained that there was "no doubt that Mr. Brady would not have been released before the expiration of the complained of 78 hour period regardless of when within that period he would have been brought before a judge." Id. at *2. Brady also cites *Goldman v. Forbus,* 17 Fed. Appx. 487 (8th Cir.2001) (nominal damages proper where arrestee not promptly take before judge but suffered no damages), to support the nominal damage award.

"A violation of a due process right guaranteed by the Constitution that leaves the plaintiff no worse off entitles him to nominal damages, but only nominal damages." *See Carey v. Piphus*, 435 U.S. 247, 260, 98 S.Ct. 1042, 1051, 55 L.Ed.2d 252 (1978). Here, plaintiff was

---

[1] Plaintiff never established at trial how long her detention was in police custody. According to plaintiff she never presented any evidence establishing what time she believed she was under arrest and at what time she received her probable cause hearing.

in custody for over 10 months. Her claims of false arrest, coercive questioning, malicious prosecution, and IIED compensate for her time. Plaintiff simply has failed to demonstrate, as a matter of law, why the few hours in police custody beyond the 48-hour mark allow her to recover more than nominal damages on this claim.

## III. Defendants Are Entitled To Judgment As A Matter Of Law On Plaintiff's Coerced Confession Claim.

### A. Arguments Raised In Initial Rule 50 Motion At Trial.

As discussed in defendants' initial Rule 50 motion, plaintiff failed to present any evidence that Defendants coerced a confession from her. Nor did plaintiff present any evidence of a "coerced confession." Plaintiff denied she ever confessed and therefore, essentially claimed that Brassil fabricated the confession contained in the hand written statement. Defendants incorporate by reference their arguments made in their original Rule 50 motion submitted to the Court during trial.

### B. Jury Was Not Instructed To Find That Conduct "Shocks The Conscience."

At Summary Judgment, Judge Filip laid out plaintiff's coercive questioning claim as follows:

> Precedent teaches that, generally speaking, there is no "free-standing due process claim whenever unfair interrogation tactics . . . are used to obtain a confession"—that is, "short of those that may **shock the conscience** and thereby implicate the Supreme Court's substantive due process rulings." *Wallace v. City of Chicago*, 440 F.3d 421, 429 (7th Cir. 2006); *see also Chavez v. Martinez*, 538 U.S. 760, 779–80 (2003) (Souter, J. concurring in part and delivering the judgment of the Court in part)). In *Chavez*, the Court remanded Mr. Martinez's claim to determine whether coercive police questioning (while he was in the hospital after being shot) constituted a substantive due process violation. *Id.*, 538 U.S. at 779 (Souter, J. concurring). Here, Plaintiff has put forth evidence that Defendants' allegedly compelled her confession through a lengthy and coercive interrogation and detention that could potentially ground a successful **substantive due process claim.**

Summary Judgment Order at pg. 4 of 8.

This Court, though, did not instruct the jury on the most critical element of plaintiff's substantive due process claim - that the subject conduct "shocks the conscience." In his summary judgment decision, Judge Filip noted that plaintiff's coerced confession claim is grounded in the Fourteenth Amendment, as opposed to the Fifth Amendment's Self-Incrimination Clause. *Chavez v. Martinez*, 538 U.S. 760 (2003). The claim is a substantive due process claim. The Supreme Court explained:

> Our views on the proper scope of the Fifth Amendment's Self-Incrimination Clause do not mean that police torture or other abuse that results in a confession is constitutionally permissible so long as the statements are not used at trial; it simply means that the Fourteenth Amendment's Due Process Clause, rather than the Fifth Amendment's Self-Incrimination Clause, would govern the inquiry in those cases and provide relief in appropriate circumstances

> The Fourteenth Amendment provides that no person shall be deprived "of life, liberty, or property, without due process of law." Convictions based on evidence obtained by methods that are "so brutal and so offensive to human dignity" that they **"shoc[k] the conscience"** violate the Due Process Clause

Id. at 773-774.

To prevail on a substantive due process claim – the actions must "shock the conscience." *See Brown v. Plainfield Community Consol. Dist. 202*, 522 F.Supp.2d 1068, 1076 (N.D. Ill.2007)(Castillo, J)("To violate substantive due process, a defendant's conduct <u>must</u> "**shock the conscience**" and be "unjustifiable by any governmental interest."); *Schaefer v. Goch*, 153 F.3d 793, 799 (7th Cir. 1998)("Under the substantive due process component of the Fourteenth Amendment, the proper inquiry in a case such as this one is whether the officer's conduct was enough to **shock the conscience**."); *Carlson v. Bukovic,* 2008 WL 2397682 (N.D.Ill.,2008) ("Typically, an individual's Fourteenth Amendment due process rights are violated only if a government official's actions display a deliberate indifference to life or liberty that **'shocks the conscience'**"); *Bakalich v. Village of Bellwood*, 2006 WL 1444893 (N.D.Ill.,2006) ("Precedent

instructs that, under the doctrine of "substantive due process," the Fourteenth Amendment

prohibits "an abuse of government power which **'shocks the conscience**.""").

The Court's instruction, taken from plaintiff, stated:

> In this case, Plaintiff claims that Defendant violated her due process rights by
> subjecting her to coercive questioning.  To succeed on this claim, Plaintiff must
> prove each of the following things by a preponderance of the evidence:
>
> 1. The Defendant used physical or mental coercion to obtain a
>    confession from Plaintiff.
> 2. The Defendant's use of physical or mental coercion was
>    outrageous.

Defendants proposed instruction was rejected.  Defendant, in line with the essential

elements of a substantive due process claim, proposed:

> In this case, Plaintiff claims that the defendants coerced a confession. In order for
> Plaintiff to succeed on her coerced confession claim, she must show, by a
> preponderance of the evidence, all of the following as to each defendant:
>
> 1. That the Defendant used outrageous interrogation tactics;
> 2. That the tactics were the reason that Plaintiff confessed; and
> 3. That those tactics **shock the conscience.**

Defendants Proposed Instruction No.  29.

"On a motion for a new trial based on improper jury instructions, the question is

'whether the instructions, when considered in their entirety and not in isolation, were sufficient

to inform the jury of the applicable law.'" *Thomas ex rel. Smith v. Sheahan*, 2008 WL 2266314

*14 (N.D.Ill.,2008)(Castillo, J) *citing Alcala v. Emhart Indus., Inc.*, 495 F.3d 360, 363 (7th

Cir. 2007).

Give this missing essential element, in this, and any substantive due process claim, the

court should grant a new trial and strike the jury verdict on plaintiff's substantive due process

claim. *See Commonwealth Ins. Co. v. Titan Tire Corp.*, 398 F.3d 879 (7th Cir. 2004)("Reversal

is warranted when an instruction misstates the law and this misstatement misled the jury causing

prejudice to one party.").

**C.     Plaintiff Is Only Entitled To Nominal Damages.**

Third, as with plaintiff's unlawful detention claim, plaintiff has failed to prove what "actual injury" she suffered from the coercive questioning claim.  Plaintiff never presented any evidence what damages she allegedly sustained from the confession.   As explained, plaintiff could have been charged with a crime, regardless of her confession.  (Tr. at pgs. 601 and 609). Plaintiff's false arrest and malicious prosecution claim are compensating her for her detention. Moreover, the jury did not award any damages for the use of the confession at trial.   To the extent that it goes to her prosecution, she cannot recover twice for the same injury, as explained in defendants Rule 59 motion.

**CONCLUSION**

Based on the arguments raised, plaintiff is entitled to only a nominal damage recovery for the 48-hour violation claim.  Defendants are entitled to judgment as a matter of law as to the remaining claims.

**WHEREFORE,** the Defendant Officers, respectfully request that this Court grant their Rule 50 motion for judgment as a matter of law.

Respectfully submitted,

s/ Avi T. Kamionski
Avi T. Kamionski

Andrew M. Hale
Avi T. Kamionski
Andrew M. Hale & Associates
53 West Jackson
Suite 1757
Chicago, Illinois 60604
312-341-9646
312-341-9656 (fax)