**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RACHELLE JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 C 8289 |
| | ) | |
| CITY OF CHICAGO, et al, | ) | Judge Castillo |
| | ) | |
| Defendants. | | |

**PLAINTIFF'S COMBINED RESPONSE TO DEFENDANTS' MOTIONS**
**FOR NEW TRIAL, JUDGMENT AS A MATTER OF LAW, AND REMITITTUR**

Plaintiff, Rachelle Jackson, by one of her attorneys, Daniel S. Alexander, for her

combined response to defendants' motions for new trial, judgment as a matter of law, and

remitittur, states as follows:

**Introduction**

After failing to offer a settlement anywhere near what this Court recommended and

then having the jury credit Rachelle Jackson's version of the events, the defendants now ask

this Court to order it a new trial or to substitute its judgment on damages for that of the jury.

In so doing, defendants necessarily ignore key precedents, much of plaintiff's evidence, and

plaintiff's 7th Amendment right to have a jury determine her damages.  As the argument below

makes clear, here plaintiff presented substantial competent evidence on all of her claims,

evidence the jury was entitled to believe.  This evidence of the outrageous, even sadistic, abuse

of power by defendants more than supports the jury's considered and intelligent verdict.

Because the damages determined by the jury are supported by the evidence and are clearly not

"monstrously excessive," any substitution by the Court of its judgment for that of the jury would be an abuse of discretion.

**Plaintiff's IIED Claim Was Well Supported by the Evidence**

In light of the evidence adduced at trial, and controlling 7th Circuit precedent, defendants' arguments against the jury's IIED liability determination border on the frivolous. Indeed, at the summary judgment phase of the trial, following the 7th Circuit opinion in Lopez v. Chicago, 464 F.3d 711 (7th Cir. 2006) defendants withdrew their claims that Detectives McCormack and O'Donnell should be dismissed as a matter of law.  (See 9-7-07 S.J. Order, Filip, J., p.8)  In Lopez, the 7th Circuit reversed the district court's grant of judgment as a matter of law, where a murder suspect was locked in a small interrogation room for four days and nights, with no operable window, no clock, no toilet, and no sink.  For the first two and ½ days, Lopez was given almost no food or water.  Lopez, supra, p. 716-717.  In reversing, the 7th Circuit reasoned that a rational jury could have found that the detectives subjected Lopez to dire physical deprivation in order to coerce a confession out of him, and that this conduct was, in fact, extreme, outrageous, and intended to inflict severe emotional distress.  Id. at 721.  In so holding the court also noted precedent that where the defendants exercised more control over the plaintiff, the more likely their conduct will be found to be outrageous.  Id., citation omitted. In Lopez as in this case, "the detectives exercised nearly complete control over [plaintiff's] ability to move, sleep, eat, drink, and use the bathroom . . ."  Id.

The facts of Lopez are strikingly similar to the instant case.  Evidence was presented, and the jury obviously credited it, that Rachelle was subjected to 2 and ½ days of dire physical deprivation and emotional abuse while locked in a windowless small interrogation room.  She

received very little food or water, was denied use of the bathroom and forced to repeatedly urinate on herself.  She was subjected to repeated humiliating verbal and racial attacks, including threats of murder charges.  She was denied use of her asthma inhaler.  When she told the detectives that she was having an asthma attack, they blew cigarette smoke in her face.  The detectives then fabricated charges and "evidence" against her out of whole cloth, and repeatedly lied and perjured themselves to subject her to almost eleven months in Cook County Jail.   Clearly, under <u>Lopez</u>, the defendants' conduct rose to the level of IIED.

As to the requirement of actual emotional distress, the 7th Circuit held this met in <u>Lopez</u> by the plaintiff's testimony that he became disoriented and started hearing voices.  Id. at 721.  Similarly, Rachelle testified about her disoriented state resulting from abuses of defendants.  However, in this case, the jury did not have to rely solely on this self report.  An extremely well qualified psychiatrist, Dr. Yohanna, testified that Rachelle did in fact suffer severe emotional distress, meeting the requirements of the diagnosis of anxiety disorder.  Again, the defendants' arguments border on the frivolous.

**The City of Chicago Was Properly Listed as a Defendant on the Verdict Forms**

The City of Chicago was a listed defendant in this case, even after plaintiff dismissed the Monell claim.  The City was a respondeat superior defendant in all the state claims, even following the summary judgment ruling.  Defendants have cited no case law which supports their argument that plaintiff was not entitled to have a proper state-law defendant listed on the verdict forms.  Indeed, the Illinois pattern instructions deal with this issue repeatedly, and this was the source of the instructions submitted by plaintiff on how to deal with the City defendant.  For example, plaintiff's instruction number 23, which explained the principal-agent

relationship of the City and the individual defendants, is modified from IPI 50.01.  It is a correct

statement of the vicarious liability of the City of Chicago as to the state claims.  In addition, the

7th Circuit Model Jury Instruction 7.02, given by the Court as Plaintiff's 39, plainly states in the

Committee Comments that "if the case involves a supplemental state claim involving

*respondeat superior* liability, this instruction should be modified to limit it to the federal law

claim."  This modification was made in Plaintiff's Instruction 39 given by the Court.  Moreover,

while defendants presented an initial verdict form of their own, it was replete with problems

and inaccuracies, lacking even all the claims of plaintiff.  When this was pointed out to

defendants, defendants never submitted another verdict form without the City of Chicago, and

never preserved an objection to the verdict form ultimately used, or to Plaintiff's 23 or 39

which also referenced the City as a state claim defendant.  Accordingly, any objection is now

waived.

**The Willful and Wanton Requirement Is Subsumed in the IIED and Malicious Pros Instructions**

Defendants make a one-paragraph argument that there should have been a willful and

wanton requirement in the IIED and malicious prosecution claims, without citation to case law.

However, a cursory look at the elements instructions for these torts show that they are

intentional torts, with their own unique requirements.  In Lopez, the 7th Circuit listed the

elements of IIED.  These elements do not contain a willful and wanton plank.  Lopez, supra, 464

F.3d at 720.  Obviously, the nature of the tort makes it impossible to meet the elements

without culpable behavior rising to the level of willful and wanton.  Similarly, the malicious

prosecution instruction, number 24, has a malice element, which is then defined in detail in

instruction 25.  Again, this element more than subsumes the requirement of willful and wanton

conduct.

**The Jury's Award For Unreasonable Length of Confinement is Supported by the Evidence and Controlling Precedent**

In arguing for only nominal damages on plaintiff's length of detention claim, defendants

misstate both the evidence and the case law.  Contrary to defendants' claim, there is no case

law that says it is constitutionally permissible to hold an arrestee for 48 hours prior to a

Gerstein probable cause hearing.  (Defs' Motion for JML, p.13)  In fact, as the 7th Circuit

explained in <u>Lopez, supra</u>, 464 F.3d at 721-22, "a lesser delay might still be unconstitutional 'if

the arrested individual can prove that his or her probable cause determination was delayed

unreasonably.'"  (citations omitted).  The court goes on to explain that the 48 hour rule simply

shifts the burden to the government to justify the warrantless detention after that period has

expired.  Id.  The court further ruled that Lopez could, in fact, recover compensatory damages

for the unlawful duration of his confinement, specifically stating that the argument by

defendants for only nominal damages was "weak."  Id. at 722.  The court, noting that

"compensatory damages are the norm when a plaintiff prevails on a sec. 1983 claim . . .," held

that Lopez presented evidence, <u>inter alia</u>, of emotional injury during his extended interrogation,

and that, had he been moved from the harsh conditions of the interrogation room to a jail, his

mind might not have deteriorated into the delusional state which led to his false confession.  Id.

at 722-23.

When the controlling precedent of <u>Lopez</u> is applied to the facts of this case, the result is

clear.  Contrary to defendants' claims, Rachelle presented much evidence on the brutal tactics

used by the defendants to coerce a confession out of her during her lengthy pre-<u>Gerstein</u>

ordeal.  She also testified that she was not brought before a judge until the morning following

the two and one half day ordeal in the 5 X 10 room.  Accordingly, the length of her illegal

detention was at least sixty hours, during which she testified she became, like Lopez, very

disoriented.  From the testimony elicited at trial, the jury could certainly conclude that the

defendants intentionally and unreasonably extended her warrantless detention well past

constitutional limits in order to break down Rachelle into making a false confession.  The

horrific nature of that lengthy illegal detention obviously resonated with the jury, as did the

result of the extended detention – causing Rachelle to sign a false confession.  Under <u>Lopez</u>,

Rachelle is entitled to the compensatory damages awarded by the jury.

**It Would Be Inappropriate for the Court to Order Any Remitittur**

<u>Introduction</u>

Defendants argue that this Court should remit most of the jury's verdict in this case,

perhaps down to one of the amounts suggested by the Court as a possible pretrial settlement

figure.  This would make interesting precedent.  No longer would defendants have to worry

about managing risk by settling cases pretrial.  They could refuse the Court's suggested

settlement figures and simply wait for the jury verdict, and then ask the Court to remit any

damages above the suggested amount.  Fortunately for our justice system, case law and the

constitution are squarely against this approach.  Defendants further argue in their quest for a

remitittur that this Court should assume that the jury disregarded its clear instructions, and that

the Court should attempt to construe the jury's considered verdict in any manner favorable to

their argument, no matter how convoluted.  Unfortunately for defendants, the Seventh

Amendment and controlling case law from days ago, all the way back to middle ages English common law, militate strongly against this result.

For example, in <u>Feltner v. Columbia Pictures Television, Inc</u>., 523 U.S. 340 (1998), the Supreme Court reversed the circuit court's denial of jury-determined damages in a copyright case. The Court held that the Seventh Amendment right to a jury trial includes the right to have the jury determine the <u>amount</u> of the damages. <u>Feltner, supra</u>, 523 U.S. at 353, citing, *inter alia*, Lord Townshend v. Hughes, 2 Mod. 150, 151, 86 Eng. Rep. 994, 994-995 (C.P. 1677) ("by the law the jury are judges of the damages.") While this Court raised the issue of the recent Supreme Court case <u>Exxon Shipping Company v. Baker</u>, 128 S.Ct. 2605 (2008), the 7th Circuit has, in recent days, had a chance to examine the impact of <u>Exxon</u> on a sec. 1983 case. In <u>Kunz v. DeFelice and City of Chicago</u>, Nos. 06-3827 and 06-3828, Slip op. August 14, 2008, the 7th Circuit held that <u>Exxon</u> was limited to the award of punitive damages under federal common law in an admiralty case, and sec. 1983 punitive damages must instead be analyzed under tort standards. <u>Kunz, supra</u> at 18-19. The court found that punitive damages of $90,000 on a $10,000 compensatory verdict was not excessive. Id. at 20-21. In so holding, the court reasoned that the $10,000 compensatory award for a police beating was low, and that "the need to deter such behavior is plain:  police brutality is a longstanding problem . . . " Id. at 20. The 7th Circuit has also stated that "a trial judge may vacate a jury's verdict for excessiveness **only** when the award was 'monstrously excessive' or the award has 'no rational connection to the evidence.'" <u>DeBiasio v. Illinois Central Railroad</u>, 52 F.3d 678, 687 (7th Cir. 1995) (emphasis added, citations omitted) (jury verdict of $4.2 million not monstrously excessive for left arm amputation).

<u>There is No Duplication of Damages If the Jury is Presumed to Follow Instructions</u>

There is no doubt that some of plaintiff's nine claims that went to the jury had elements of damages that overlapped in certain respects.  That is precisely the reason that plaintiff submitted her instruction number 28, which was given without objection by defendants.  This instruction was based on the 5th Circuit Model number 15.14, and is commonly used in this jurisdiction.  The instruction clearly states, in the first paragraph, that "you must not award compensatory damages more than once for the same injury.  For example, if the plaintiff prevails on two claims and establishes a dollar amount for her injuries, you must not award her any additional compensatory damages on each claim.  The plaintiff is only entitled to be made whole once, and may not recover more than he has lost.  Of course, if different injuries are attributed to the separate claims, then you must compensate the plaintiff fully for all of her injuries."  Defendants, in their arguments that the jury duplicated damages, must necessarily claim that the jury ignored this instruction.  This, however, goes directly against controlling case law.

In <u>Havoco of America, Ltd. V. Sumitomo Corp. of America</u>, 971 F.2d 1322 (7th Cir. 1992), the defendants made the argument that jury verdicts on four counts totaling $15 million should not be cumulated because damages overlapped on some of the counts.  The 7th Circuit rejected this argument because the jury was instructed, as here, that they "should not make duplicate damages awards for the same injury."  Id. at 1346.  In so holding, the court reiterated the black letter law that "since 'we normally presume that juries follow the court's instructions,' we must presume that the damages the jury awarded on each of the four counts are not duplicative awards for the same injury, and thus cumulation of the awards was proper."  Id. at 1346,

8

citations omitted.  This is a consistent theme in 7th Circuit jurisprudence.  In <u>Medcom Holding Company v. Baxter Travenol Laboratories, Inc.</u>, 106 F.3d 1388 (7th Cir. 1997), the court reversed the trial court's refusal to enter a jury verdict cumulating to $13.3 million.  The court found that the district court abused his discretion by substituting its judgment over that of the jury, and it repeatedly criticized the trial judge for underestimating the jury's abilities.  Id. at 1397-1402.  In so holding, the court stated "[w]e emphasize that the calculation and assessment of damages is a question of fact that is reserved for the jury."  Id. at 1400, citations omitted.  The court further cautioned that a jury's verdicts must, if possible, be viewed in a manner that makes them consistent, and that straining to find the verdicts inconsistent "results in a collision with the Seventh Amendment."  Id. at 1401.

The defendants cite two 2nd Circuit cases which actually support plaintiff's arguments and in no way collide with the controlling 7th Circuit precedent discussed above.  In <u>Bender v. City of New York</u>, 78 F.3d 787 (2nd Cir. 1996), the court reversed the cumulation of verdicts on separate counts because "the jurors should have been instructed that they can award additional damages, beyond what they award for an overlapping tort, only to the extent that they find some aspect of injury that has not been already compensated for by the award of damages for the related tort."  Id. at 794.  This language is almost an exact paraphrase of plaintiff's instruction 28 given in this case.  The Second Circuit completed the analysis in the unpublished opinion cited by defendants, <u>Lieberman v. Dudley</u>, 199 F.3d 1322, 1-2 (2nd Cir. 1999), where the court affirmed the cumulation of overlapping sec. 1983 torts of assault, battery, and IIED.  In so holding, the court stated:  'a jury's award is not duplicative simply because it allocates damages under two distinct causes of action. . . . the tort of inflicting

emotional distress in the context of a false arrest or a malicious prosecution possibly involves some component of damages over and above the damages that may be awarded for these police misconduct torts. . . . the district court gave exactly the kind of detailed warning about duplicative damage awards that we asked for in <u>Bender</u>.  We therefore have **no basis** upon which to set aside the awards returned by the jury." Id., citations omitted, emphasis added. Here, as in the cases cited above, there is no basis to overturn the considered verdicts of the jurors.  Perhaps the defendants would have an argument if the plaintiff had improperly argued against the warning against duplication of damages in Instruction 28.  In fact, just the opposite is true.  In plaintiff's closing, Mr. Smith explicitly previewed instruction 28 to the jury, reminding them that they could not award duplicative damages on successive counts.  Under the case law cited above, the verdicts must be cumulated and entered.

<u>A Strained Reading of the Verdicts is Required to Find Them Inconsistent</u>

Under case law cited above, it would be a Seventh Amendment violation to attempt to read inconsistency into the verdicts.  In fact, a cursory look at the verdict forms shows how the jury carefully considered each claim and each defendant separately, consistent with the instructions.  There is nothing inconsistent or nefarious about the jury's award of $150,000 on the federal false arrest and $250,000 on the state false arrest.  The jury was instructed to consider the claims separately.  They had different elements and damage instructions.  In fact, the jury found different parties liable on the two claims, finding Detective O'Donnell liable on the state law claim but not on the federal.  Perhaps the willful and wanton element of the state claim focused the jury more on the misconduct of the two detectives.  As to Claim 2, the jury

found McCormack liable for coercive questioning, but not Detective O'Donnell.  Again, this shows a jury that was carefully considering the claims against each individual.

That the jury in fact followed instruction 28 and did not duplicate damages is plainly shown by the verdict on Claim 3, Self Incrimination.  Here the jury found only McCormack liable, as in Claim 2 for coercive questioning, but then they awarded zero dollars in  damages.  It seems obvious that the jury considered damages to be duplicative on these closely related accounts, and made the appropriate adjustment.  On Claim 4, conditions of confinement, all defendants were found not liable.  Apparently the jury bought the defense argument that the detectives had no control over the physical conditions of the holding cells, etc.  Claim 5, length of detention, is discussed in detail above.  Just as the 7th Circuit authorized in Lopez, the jury apparently felt that the brutal extended confinement was engineered to achieve the purpose it did – to get Rachelle to sign a false confession.  On Claim 6, the jury found for the defendants on the race-based conspiracy, again showing a discerning jury that carefully followed the Court's instructions.  On Claim 8, malicious prosecution, clearly the jury was compensating Rachelle for the horrifying eleven months of prosecution she wrongfully faced.  Claim 9, IIED, is discussed above.  Rachelle presented much evidence of the emotional damage she suffered at the hands of defendants.  As discussed below, this verdict is well within the range of similar tort awards in this jurisdiction.  Given the reprehensible, inhumane, and humiliating conduct of the defendants, and the damages proved at trial, this Court should not substitute its judgment for that of the jury.  Clearly there is a rational connection between the award and the evidence.

<u>The Verdict Is Within the Range of Other Cases</u>

In <u>Estate of Michael Pleasance v. Chicago</u>, 04 L 1343, the jury awarded $12,500,000 for the wrongful shooting of the decedent by a Chicago cop.  (See attached excerpts from Cook County Jury Verdict Reporter.)

In <u>Fox v. Will County</u>, 04 C 7309, father and mother awarded $15.5 million for false arrest, malicious prosecution, IIED, etc., including $2.6 million for IIED, and $6.2 million punitive damages.

In <u>Finwall v. Chicago</u>, 04 C 4663, $2.025 million awarded for false arrest and malicious prosecution.

In <u>Coprez Coffie</u> v. Chicago, 05 C 6745, $4,000,000 stipulated judgment for excessive force where cop inserted screwdriver in arresttee's anus.

In <u>Cheryl Marshall Washington v. Chicago</u>, 03 L 11306, plaintiff awarded $ 1,579,447 for false arrest, including $1,000,000 for embarrassment and $500,000 for emotional distress.

**Conclusion**

When one considers the case law detailed above, the shocking conduct of defendants, the impact of that conduct on Rachelle, and the jury's carefully considered verdicts, it is clear that the verdict is well supported by the evidence.  This Court would have to strain to find that the verdict was monstrously excessive.  Accordingly, any remitittur by this Court would only be the substitution of the Court's opinion over the considered deliberations of the jury.  This would be contrary to controlling precedent and would constitute an abuse of the Court's discretion.  Accordingly, plaintiff respectfully requests that this Court deny defendants' motions in full.

Respectfully submitted,

RACHELLE JACKSON

/s Daniel S. Alexander

By:  -----------------------------------------------

One of her attorneys

Daniel S. Alexander
LAW OFFICES OF DANIEL S. ALEXANDER
820 West Jackson Blvd., Suite 300
Chicago, IL  60607
312-263-8005